## COMMONWEALTH *vs.* BOSTON AND NORTHERN STREET RAILWAY COMPANY.

Essex.    March 11, 1912. — May 24, 1912.

Present: RUGG, C. J., BRALEY, SHELDON, & DECOURCY, JJ.

*Street Railway.    Constitutional Law.*

A right to fix fares given to a street railway corporation by a special charter, subject under the general laws to alteration or repeal, is not impaired by a statute reasonably regulating the fares to be charged for the transportation of pupils of schools.

St. 1910, c. 567, provides that the rates of fare charged by street railway companies for "transportation of pupils of the public day schools or public evening schools or industrial day or evening schools . . . or private schools" in travelling between home and school "shall not exceed one half the regular fare charged," and imposes a penalty for each violation. A street railway company convicted on an indictment under this statute alleged exceptions to the submission of the case to the jury, and contended that upon the facts shown the statute in its operation failed to protect the defendant in the enjoyment of its property and deprived it of its property without due process of law contrary to the Constitution of the Commonwealth and that of the United States. The defendant, to show that it incurred a substantial loss on each pupil carried at half fare, relied on a computation based on the average cost of carrying a passenger, which was arrived at by dividing the amount of the operating expenses and fixed charges for a certain period by the number of passengers during that period. It appeared, however, that the defendant gained in the operation of its railway revenue from sources other than fares, and that it also had income from sources apart from operation, so that the operating expenses and fixed charges could not be treated as incurred wholly for the transportation of passengers. *Held,* that the charging of half fare, having been prescribed by the Legislature as a police regulation in the interest of education, was presumed to be reasonable and constitutional until shown to be otherwise, that it was not enough for the defendant to show that no profit might come from the particular service but that it must make it appear that in conjunction with all the service of the defendant the rate was unreasonable and was equivalent to spoliation, that the basis of the defendant's computation was indecisive and that it was not plain that the rate was confiscatory or that the defendant might not be in better condition by complying with the statute than by failing to do so, and that the case properly was left to the jury.

St. 1910, c. 567, is constitutional as a proper exercise by the Legislature of the police power.

INDICTMENT, found and returned in September, 1910, charging the defendant with a violation of the provisions of St. 1910, c. 567, in refusing to sell to one Barker, a boy fifteen years of age, who was a pupil of the Lawrence Independent Industrial School, tickets in lots of ten for his transportation between the school house of that school and his home at a rate of fare not exceeding one half the regular fare charged by the defendant for the transportation of passengers between those points.

In the Superior Court the case was submitted to *Bell, J.,* upon an agreed statement of facts. The defendant presented fourteen requests for rulings, in which it asked the judge to rule that the defendant did not appear to have been guilty of any offense at law, that the jury must return a verdict of not guilty, that St. 1910, c. 567, was unreasonable, that it was unconstitutional, and was unconstitutional as applied to the defendant, under various provisions of the Constitution of the Commonwealth and of the Constitution of the United States, the questions raised being stated in the opinion.

The judge refused to make any of the rulings requested, and left the case to the jury. The jury returned a verdict of guilty; and the defendant alleged exceptions to the refusal of the rulings and to the submission of the case to the jury.

*B. W. Warren,* (*C. R. Lamson & W. H. Stone* with him,) for the defendant.

*H. C. Attwill,* District Attorney, for the Commonwealth.

RUGG, C. J. The only question in this case is whether St. 1910, c. 567, is constitutional as applied to the facts appearing of record. This statute provides that the rates of fare charged by street railways for "transportation of pupils of the public day schools or public evening schools or industrial day or evening schools . . . or private schools" in travelling for attendance between home and school "shall not exceed one half the regular fare charged" for the transportation of other passengers between the same points. The constitutionality of R. L. c. 112, § 72, which made similar requirements as to pupils in public schools alone was upheld in *Commonwealth* v. *Interstate Consolidated Street Railway,* 187 Mass. 436; S. C. 207 U. S. 79. This section as amended by St. 1906, c. 479, so as to include pupils in private schools was considered in *Commonwealth* v. *Connecticut Valley Street Railway,*

196 Mass. 309. It was held there that the intention of the Legislature as manifested by the act was to include only pupils of the public schools required by R. L. c. 42, §§ 1 and 2, for the education of children and youth, and in private schools of a like kind, and to exclude pupils of industrial and evening schools, and other private and public schools. The present act includes by express words those who attend industrial and evening schools maintained by the public.

The constitutionality of the statute is concluded by these decisions so far as objections rest on a denial of equal protection of the laws to the defendant because of exemption of the Boston Elevated Railway Company from the requirement of the statute, and on a denial of equal protection of the laws to members of the travelling public not included in its provisions. The circumstance that a larger number of persons are now within the scope of the statute makes no material difference. The class now as before is confined to those who are attending institutions for education chiefly provided at public expense. The factors of youth and size of pupils and hours of travel being when other travel was lighter, and probability of far greater travel at the less rate because of the financial limitations of scholars in schools were alluded to in 187 Mass. at 440, but they were not treated as determinative. The pivotal consideration was whether the grouping of pupils in schools as a class entitled to special consideration in matter of fares was reasonable or arbitrary, and that was decided in favor of the statute. The other considerations are not rendered inapplicable because by reason of the greater age of some who go to industrial schools the proportion of children in the favored class may be less.

The defendant has complied with the earlier fare statutes. But this complaint relates to a refusal, contrary to the requirement of the statute, to sell tickets to a boy fifteen years old, who was a pupil pursuing the regular course in mechanic arts in a public industrial school in Lawrence.

The statute does not impair, in contravention of art. 1, § 10 of the Constitution of the United States, the obligation of the contract set forth in the charter of the Lynn and Boston Railroad Company (St. 1859, c. 202, § 4), to which it is said that the defendant has succeeded. That charter when granted was liable by

general law to alteration or repeal, Rev. Sts. c. 44, § 23, R. L. c. 109, § 3, and was therefore taken by consent subject to this condition, of which it cannot now be heard to complain. *Parker* v. *Metropolitan Railroad*, 109 Mass. 506. *Selectmen of Clinton* v. *Worcester Consolidated Street Railway*, 199 Mass. 279. This reserved power of amendment is not exceeded, so long as the object of the grant is not defeated or essentially impaired and property and rights acquired upon the faith of the charter are not taken away. The charter right to fix fares is subject to amendment within this limitation. Moreover, no charter contract can prevent the Legislature from a valid exercise of the police power. *Texas & New Orleans Railroad* v. *Miller*, 221 U. S. 408, 414.

The defendant's chief ground of attack is that the agreed facts show that the statute in its practical operation fails to protect it in the enjoyment of its property and deprives it of its property without due process of law, contrary to the Constitution of this Commonwealth and of the United States. The governing principle of law in its general statement is well settled. The legislative rate must be so small as to occasion a loss to the carrier if it performs the service required for the price permitted before it can be held unconstitutional provided the total net earnings are such as to yield a reasonable return upon the value of the corporation as a whole, having regard to the fact that this is a burden imposed by a police regulation in the interest of education. It may be that a particular rate for a given carriage taken by itself would yield little or no profit, but, taken in conjunction with the entire transportation, would not be unreasonable. The circumstance that the defendant has earned and paid reasonable dividends (five per cent per annum since 1905 as stated by the defendant in its brief), while of weight is by no means decisive. It is not a question which commonly can be solved as a mathematical problem. It depends upon the consideration of several elements. It is a mixed question of law and fact. It must be determined solely as one of legislative power, and not as one of expediency or wisdom.

This case does not involve a general scheme of rates, but only that for a particular service. The inquiry is confined to the point whether a performance of a specified duty at the rate fixed is so inherently unjust and unreasonable as to amount to the depriva-

tion of property without due process of law. It is not enough to show that no profit may come from the particular service, it must appear that in conjunction with all the service of the corporation the rate is unreasonable and is equivalent to spoliation. The presumption is that the rate fixed by the Legislature is reasonable. The onus rests on the carrier to show the contrary. Every proper assumption must be made in favor of the constitutionality of the statute, and it is not to be declared beyond the power of the Legislature unless it is free from all fair doubt. The case must be a very clear one before the courts will interfere with a legislative determination of rates. *Minneapolis & St. Louis Railroad* v. *Minnesota,* 186 U. S. 257, 264. *Knoxville* v. *Knoxville Water Co.* 212 U. S. 1, 18. *Lincoln Gas & Electric Co.* v. *Lincoln,* 223 U. S. 349, 357. *Wilcox* v. *Consolidated Gas Co.* 212 U. S. 19, 41. *Interstate Commerce Commission* v. *Union Pacific Railroad,* 222 U. S. 541. *Atlantic Coast Line Railroad* v. *North Carolina Corporation Commission,* 206 U. S. 1, 26. *Commonwealth* v. *People's Five Cents Savings Bank,* 5 Allen, 428, 431, 432. As applied to this particular kind of case it was said in 187 Mass. at 439, that such a classification of passengers and regulation of their fares in the general interest of education might go to the extent of requiring the particular service to be done without profit, but it could not go so far as to impose expense "upon the street railway companies, or upon that part of the public which pays fares to street railway companies." The precise point is whether the agreed facts show that there is required of the defendant an expense for complying with the statute so clearly as not to warrant an opposite finding by the jury. It must be assumed that accurate instructions were given to the jury. Do the agreed facts, with the proper inferences which the jury could have drawn, warrant a general verdict of guilty? *Commonwealth* v. *Gordon,* 159 Mass. 8.

The facts upon which the defendant relies are that by dividing the total number of passengers carried for a definite period of nine months or a year into the operating expenses and fixed charges for the same period, it appears that the average cost of carrying each passenger is about four and one half cents, and that as its reasonable regular fare is five cents the result follows that to carry pupils at half fare or two and one half cents results in a loss of two cents for each pupil. Even if this was all there was to be

regarded, it would not follow that compliance with the statute would cause the defendant a loss. It still might be that the number of pupils who ride at the reduced fare as compared with those who would not become passengers at the full fare, coupled with the preponderance of small children and the greater carrying capacity of each car for such passengers and the well known fact that the hours of attendance at school are not the rush hours of travel do not cause an actual loss. But these are not all the elements which must be considered. The jury were entitled to use their common knowledge. The agreed facts state that reference may be had to the reports of the Massachusetts Board of Railroad Commissioners and to the annual returns of street railway companies as printed by the commission, which includes the return of the defendant. From these sources it appears that the defendant gained substantial revenue from operation from other sources than fares. The letting of advertising space in cars, presumably including those in which school pupils are carried, and the carrying of mails, which may have been on the same cars, both yielded material amounts. It is obvious that the average expense to the company of carrying each passenger in terms of operating expenses and fixed charges, which includes as appears from the returns large sums for maintenance of roadway, buildings and equipment, or in other words in terms of total expense to the company, outside of additions to permanent assets, when compared with the rate for a single fare is not the test whether business is conducted at a loss. Other sources of revenue must be regarded than the rate of a single fare and the total revenue therefrom. In addition to the sources mentioned directly attributable to the cars in which passengers are carried is interest on deposits which is also an income in most part from fares. There are also rentals, tolls and miscellaneous earnings from operation. Moreover, operating expenses and fixed charges, which yield other revenue than fares from passengers, properly cannot be charged wholly to the cost of carrying passengers. The agreed facts contain other computations as to cost of passenger transportation in terms of operating expenses alone, and those plus certain items of fixed charges. But it is not necessary to examine them in detail. Hence it is manifest from these considerations that the basis upon which the defendant asked a verdict of not guilty is indecisive. It is

not plain that the rate is confiscatory or that the defendant may not be in better condition by complying with the statute than if it does not. It may be noted in passing that similar obligations respecting fares have been accepted voluntarily by street railway companies, whose conditions as to population served and length of line were probably not more favorable than those of the defendant. *Clinton* v. *Worcester Consolidated Street Railway*, 199 Mass. 279.

The conclusion is that this statute is an exercise of the police power which does not transcend the right of the Legislature, and the requests for rulings were refused rightly.

*Exceptions overruled.*