ALBERT K. TAPPER & others *vs.* BOSTON CHAMBER OF
COMMERCE & others.

Suffolk.   January 19, 1920. — February 28, 1920.

Present: RUGG, C. J., DE COURCY, PIERCE, CARROLL, & JENNEY, JJ.

*Boston Chamber of Commerce.   Equity Pleading and Practice,* Bill.   *Corporation,*
By-laws, Officers and agents.

A bill in equity by individual "certificate holding members" of the corporation,
Boston Chamber of Commerce, brought in their own behalf and in behalf of
others, similarly situated and entitled, who might be permitted to join as plain-
tiffs, against that corporation, its officers, board of directors and the board of
trustees constituted under the provisions of St. 1914, c. 82, amending the charter,
St. 1909, c. 251, by adding a new § 21, is not multifarious if its main object is
to restrain the trustees from making what, it is alleged in the bill, would be an
illegal purchase of additional certificates of membership in the corporation and
from voting at corporation meetings upon certificates already held by them,
and if every officer of the corporation and trustee is joined as a defendant in
order that each and all of them in their respective capacities may be enjoined
from doing or consenting to the doing of any act which, conjunctively with acts
of any one or of others of them, might attain the result which it is the main
purpose of the bill to prevent.
Upon a demurrer to the bill above described, an allegation in the bill that a vote
of the directors of the defendant corporation, which purported to authorize the
purchases of shares declared by the plaintiffs to be illegal, was passed "by a
board of directors" of which eight members, who were named, were "ineligible
to vote upon matters affecting the management of the property of the corpora-
tion," in the absence of an allegation that the eight named members were present
or, being present, voted with the other members of the board, was *held* not to
contain an allegation showing that the vote was illegal because it was partici-
pated in by persons having no authority to do so.
The Boston Chamber of Commerce is not a business corporation.
The charter of the Boston Chamber of Commerce, St. 1909, c. 251, provided
for two classes of members, certificate holding members and other mem-
bers, and that such members other than certificate holding members should
"have equal voting power with the certificate holding members, except in
matters affecting the management of the property" of the corporation.   The
by-laws provided for a board of directors consisting of "members," part of
whom should be elected at each annual meeting for a three year term by the
"members."   There was no provision restricting the right to vote for directors
to certificate holding members or that only certificate holding members might
be directors.   Upon a demurrer to a bill in equity which called in question the
legality of a vote of the board of directors affecting the property of the corpora-
tion on the ground that some members of the board were not certificate hold-

ing members of the corporation, it was *held*, that such members of the board had a right to vote as directors upon matters affecting the management of the property of the corporation.

The charter of the Boston Chamber of Commerce, St. 1909, c. 251, provided that certificate holding members should be entitled to but one vote, although they temporarily might hold as many as five certificates. In order to effect the incorporation, certain members temporarily subscribed for certificates in excess of one to a member, which were called "excess certificates," and St. 1914, c. 82, afterwards was enacted to provide for taking their excess certificates off "their hands," and provided for the establishment of a trust and the election, by the board of directors of the corporation, of trustees and that the money appropriated for the trust "shall be used to purchase the outstanding certificates of the new corporation, or, under the direction of the board of directors, may be invested in other ways. . . . The trustees . . . shall have the power to hold an unlimited number of the certificates of the corporation." *Held*, that the statute empowered the trustees, under the direction of the board of directors, to acquire and hold in the trust fund, besides the "excess certificates," certificates of membership however classified.

The new § 21, added to the charter of the Boston Chamber of Commerce by St. 1914, c. 82, also granted to the trustees, above described, "the power to hold an unlimited number of the certificates of the corporation, and to vote the same and to receive dividends or interest upon the same, any provision of this charter or of the general law to the contrary notwithstanding." *Held*, that it was the duty and personal obligation of the trustees to vote the certificates with sound judgment and a wise regard for the general benefit of the corporation, and that, in the fulfilment of that obligation and the performance of that duty, they were not controlled by the corporation or by its board of directors.

A bill in equity by certificate holding members of the Boston Chamber of Commerce, calling in question the right of the trustees, constituted under § 21, added as an amendment to the original charter of the corporation by St. 1914, c. 82, to vote on all stock held by them, contained nothing to warrant even an inference that any vested right of any certificate holding member under the charter of 1909 was impaired without right by the amendment, and, upon a demurrer to the bill, it was *held*, that the amendment, which gave to the trustees "the power to hold an unlimited number of the certificates of the corporation, and to vote the same . . . any provision of this charter or of the general law to the contrary notwithstanding," was valid and that the trustees might vote such certificates at all meetings of the corporation, including those where only certificate holding members were entitled to vote.

BILL IN EQUITY, filed in the Superior Court on January 13, 1919, and afterwards amended, by twenty-eight certificate holding members of the corporation, the Boston Chamber of Commerce, who alleged that they brought the bill for themselves and such others, "similarly situated" and entitled, as might thereafter be admitted to join them, against that corporation and thirty individuals, including the president, the treasurer, the secretary and the members of the board of directors of the corporation, including by

name the members of the board's financial and executive committees, and the members of the board of trustees elected by the board of directors under the provisions of St. 1914, c. 82, which added to the original charter § 21, hereinafter described, seeking to restrain the purchase by the trustees of certificates of membership beyond those then held by them and from voting at corporation meetings upon those which they already held.

The defendants demurred to the amended bill. The allegations of the bill and the grounds of the demurrer are described in the opinion. The demurrer was heard by *Chase,* J., and was sustained; and a final decree was entered dismissing the bill. The plaintiffs appealed.

Material portions of St. 1909, c. 251, § 13, referred to in the opinion, are as follows:

"The new corporation by concurrent vote of a two thirds majority of both certificate holding and other members present and voting at separate meetings called for this specific purpose, notice of which meetings shall be mailed to each member not more than fifteen or less than ten days in advance, shall have the right, upon the payment of the sum of two hundred dollars and accrued interest to each certificate holder to cancel and retire all outstanding certificate-holding memberships, upon such terms and conditions as shall be determined by said two thirds majority vote. In the event of the exercise of such right of cancellation there shall be thenceforth but one form of membership in said corporation, and each member, whether previously a certificate holding or other member, shall receive a certificate representing the same individual interest in all the property, rights and privileges of the new corporation. . . ."

*H. H. Pratt,* for the plaintiffs.

*G. R. Nutter,* for the defendants.

PIERCE, J. This is a suit in equity brought by the plaintiffs, each a certificate owning and holding member of the Boston Chamber of Commerce, a corporation, for themselves and such others as may be similarly situated and entitled who may be admitted to join as plaintiffs, against the Boston Chamber of Commerce, the officers and the board of directors of that corporation, and the board of trustees elected by the directors of the corporation to administer a trust fund created by the board of directors under

the authority of St. 1914, c. 82. The bill alleges the following facts:

The Boston Chamber of Commerce and the Boston Merchants Association were authorized to unite and form one corporation under the name of the Boston Chamber of Commerce, and thereafter became such by the authority of St. 1909, c. 251. The Boston Chamber of Commerce owned real estate, the Boston Merchants Association owned no real property. Under the charter, the members of the old Chamber of Commerce each held a certificate entitling the holder to a proportional share in the real estate and other property of the corporation. The charter, also, provided for another class of members than those holding certificates; and further provided that "Such members shall be liable only for the same annual dues as are levied upon certificate holding members, and shall have no interest in the real estate, or other property of the new corporation; they shall, however, have equal voting power with the certificate holding members, except in matters affecting the management of the property, real or personal, owned by said corporation, but shall have equal rights with certificate holding members to use and enjoy the same; and they shall also have all other rights and privileges of certificate holding members, save as aforesaid. . . ." The by-laws of the corporation provide that the board of directors shall consist of twenty-three members elected at annual meetings "as hereinafter provided." Certain individual defendants, eight in number, were chosen as members of the board of directors, and none of them was an owner or certificate holder when the acts and things were done that the plaintiffs complain of.

The charter provided that the "new corporation shall consist of not more than two thousand individual certificate-holding members . . . and such number of other members as may be fixed by the by-laws. . . . Certificates . . . shall have a par value of two hundred dollars. . . . No person shall be the permanent holder of more than one certificate, but the corporation by appropriate by-laws may provide for the temporary holding by individual members of not more than five certificates, but members holding more than one certificate shall be entitled to but one vote and shall not be obliged to pay dues on more than one certificate standing in their name; *provided, however,* that upon and after the first

transfer of any such surplus certificates to any person other than the executor, administrator or trustee of the temporary holder thereof, each of such certificates so transferred shall be liable for all regular assessments." The charter also provided that each certificate holder of the old Chamber of Commerce should be entitled to receive a certificate of membership in the new corporation; and that the members of the Boston Merchants Association should be entitled to become certificate holding members upon certain conditions.

At the time of the incorporation of the defendant corporation, certain individual members for the purpose of complying with the provisions of the new charter and that it might become operative, temporarily subscribed for and purchased six hundred and fifty certificates of membership in the corporation in excess of those which they might severally hold under the charter. These certificates of membership were denominated and called "excess certificates." These "excess certificates" so subscribed for and purchased were held, in whole or in large part, by said individual members for a period of approximately four years. In the year 1914, in order that those owners who had purchased the "excess certificates" for a specific and temporary purpose only might be reimbursed for this outlay and the "excess certificates 'taken off their hands,'" the then directors petitioned for legislation enabling the corporation to establish a trust fund by means of which the "excess certificates" might be purchased from the individual holders. Later, by St. 1914, c. 82, (now embodied in § 21 of the original act,) the board of directors were empowered to establish a trust, and a board of administration of the trust to consist of three trustees who should be elected and who should hold office for the term and purposes therein set forth. Section 21 reads as follows:

"The board of directors of the new corporation shall have the power and is hereby authorized to establish from the available funds or property of the corporation a trust fund for the general benefit of the corporation. This fund shall be administered by a board of three trustees elected by the board of directors as hereinafter provided. Upon the establishment of the said trust fund the directors shall elect one trustee for the term of one year, one trustee for the term of two years, and one trustee for

the term of three years, to hold office until their successors are elected and qualified. Each year thereafter the directors shall elect one trustee for the term of three years, to hold office until his successor is elected and qualified. If any vacancy occurs in said board of trustees by resignation or otherwise, the board of directors at any regular or special meeting, may elect trustees to fill unexpired terms, but in the meantime the remaining trustee or trustees, if any, shall exercise all the powers of the board of trustees. The money or property appropriated for this fund shall be used to purchase the outstanding certificates of the new corporation, or, under the direction of the board of directors, may be invested in other ways. The trustees of the trust fund so created are empowered to receive gifts and bequests and to add the same to the fund. The income from the fund shall be paid annually or oftener into the general treasury of the chamber, and shall be treated in the same way as money coming from the payment of membership dues. The trustees of the said fund shall have the power to hold an unlimited number of the certificates of the corporation, and to vote the same and to receive dividends or interest upon the same, any provision of this charter or of the general law to the contrary notwithstanding. The trustees shall have power under the direction of the board of directors to change investments and to sell any property held by them in the trust fund, and to reinvest the proceeds, and to reissue the certificates of membership in the new corporation held by them, and to reinvest the proceeds thereof, and any purchaser of such certificates shall have the same rights, privileges and duties as if the said certificates were issued to him originally by the new corporation. In the event of liquidation, dissolution or distribution of the property of the new corporation, the trustees of the trust fund herein created shall receive their proportionate share of the sum or sums distributed among the certificate-holders, based on the number of certificates held by them. . . ." Pursuant to said statute and power the board of trustees purchased all "excess certificates" and placed them in the trust fund.

On December 18, 1918, the defendant directors passed the following vote:

"Voted to instruct the trustees of the trust fund to buy additional certificates of membership in the Chamber, at a price not

in excess of $100 per certificate, out of the income of the trust fund."

Notwithstanding the fact that there were no outstanding "excess certificates" the defendant trustees, acting under the supposed authority of the above vote, "have bargained for and are about to complete the purchase of a large number of certificates of membership in said corporation." The vote was passed and the appropriations were made by a board of directors of the corporation, of which eight are members ineligible to vote upon matters affecting the management of the property of the corporation. On or about March 1, 1918, the corporation, in consideration that the certificate holders would arbitrate certain differences existing between the corporation and them, agreed that the trustees of the trust fund under § 21 of the charter should not vote in any manner the certificates held by them. In alleged violation of this agreement the defendant corporation threatens to cause these trustees to vote the certificates held in said fund, upon the question of exchanging them for second mortgage bonds to be issued by the corporation, upon the question of making costly additions to the real estate of the corporation, and upon other questions. The plaintiffs pray:

"1. That the defendants the trustees of the trust fund may be restrained and enjoined from making or completing any further purchases of certificates of membership in said corporation for or to be added to said trust fund.

"2. That the defendant Edward J. Frost, treasurer, may likewise be restrained and enjoined from paying any money of the corporation for this purpose.

"3. That the certificates of membership in said trust fund, other than the so-called 'Excess Certificates' purchased in the years 1914 and 1915, now held in said trust fund, be retired and cancelled.

"4. That the defendants, the President, Secretary and General Manager, Directors, Executive Committee and Finance Committee be severally restrained and enjoined from making any appropriation of the funds of the corporation for the purpose of further or additional purchases of the certificates of membership in the corporation for said trust fund and from authorizing or directing any vote or votes to be cast by the trustees of the trust fund upon those certificates now held in said trust fund.

"5. That the defendants, the trustees of the trust fund, be severally restrained and enjoined from casting any vote or votes as trustees of said fund upon any question in the determination of which they represent the certificates so held by them.

"6. And for such further and other relief as to this court shall seem meet and as justice and equity may require."

The defendants demurred to the bill as originally filed and as amended, and for causes thereof assigned reasons which in general are that the bill has no equity, that it is multifarious, that the vote of the directors is not invalid, that the further purchase of certificates of membership is authorized by § 21 of the charter, that the trustees are not bound by any agreement or instructions of the board of directors or of the chamber itself, and that the trustees have the right to vote the certificates at any meeting, under § 13 of the charter, and at any meeting at which the certificate holders have a right to vote as distinct from the other members of the chamber. The demurrers were sustained, and the case is before this court on an appeal from a final decree dismissing the bill. We shall consider the assignment of causes in the order followed in the defendants' brief.

1. That the bill is multifarious. The defendants contend in support of this position that the bill embraces distinct matter affecting distinct persons who have no common interest in the distinct matter alleged in the bill, and cite in support thereof *Metcalf* v. *Cady*, 8 Allen, 587, 589; while the plaintiffs argue that it is not indispensable that all parties should have an interest in all matters contained in the suit, — it is sufficient if each party has an interest in some matters in the suit and that they are connected with others, and cite *Lenz* v. *Prescott*, 144 Mass. 505, 513. The main object of the bill is to restrain the trustees from purchasing for and adding to the trust fund additional certificates of membership in the corporation, and from voting the certificates already held in that fund. To this end the charges of the bill and the prayers for relief are framed and designed to reach and embrace each officer and each trustee of the defendant corporation, and to enjoin each and any of them in their respective capacities from doing any act or consenting to the doing of any which, conjunctively with the doing of other acts and things by other officials, may result in the acquirement of additional certificates for the fund or the voting upon cer-

tificates now held in the trust fund.  We think it plain that a single bill, wherein all persons are joined who have any interest in the purchase of certificates of membership for the trust fund or in the right to vote certificates held and to be held in that fund, will afford a more adequate and efficient form of relief than several bills against several persons who individually or officially are directly interested in a part only of the relief sought against all the defendants.

2. The defendants next contend that the vote of the board of directors on December 18, 1918, was legal notwithstanding the admitted fact that eight members of that board were ineligible to vote as members of the corporation upon matters affecting the management of the property, real and personal, owned by the corporation.  By the by-laws of the corporation, "The board of directors shall consist of twenty-three members elected as hereinafter provided, and such officers as are *ex-officiis* members of the board."  The bill does not allege that the eight members of the board who are ineligible to vote upon matters affecting the management of the property of the corporation, were present or, being present, voted with other members of the board.  The by-laws provide that a majority of the board shall constitute a quorum. If the vote of the eight members would be illegal because they were not certificate holders, it must be assumed as a presumption of fact that they did not vote; and that the vote as passed was the vote of the majority of a quorum of certificate holders.  The defendants do not rest upon the presumption of the legality of the vote of the board of directors, but argue that the action of the board was not illegal even if the presence and vote of the eight members were necessary to the passing of the vote.  At common law a director in a corporation or association need not own stock. *Wight* v. *Springfield & New London Railroad,* 117 Mass. 226. By St. 1903, c. 437, § 18, a director of a business corporation must be a stockholder.  The Boston Chamber of Commerce is not a business corporation nor does it carry on any business for profit. The charter provides that "The officers of the new corporation shall consist of . . . a board of directors . . . as may be determined by the by-laws."  The by-laws provide that the "board of directors shall consist of twenty-three members," and that at each annual meeting "the members shall elect, to serve for the term

of three years, and until their successors are elected and qualified, either seven or eight directors, according to the number whose terms expire on that date." There is no provision that all members may not vote for directors, nor is the holding of certificates of membership made an essential factor to the qualification to membership in the board of directors. Membership alone, as distinguished from membership with a property right in the property of the corporation, is the status under the charter and by-laws, without which a person may not be a director. There is no allegation that the eight individual defendants named as ineligible to vote are not members of the corporation. The provision in § 12 of the charter that "other members than those holding certificates . . . shall, however, have equal voting power with the certificate holding members, except in matters affecting the management of the property," concerns the action or vote of members in their individual capacity, and does not import that such members shall not vote in matters affecting the management of property in their official capacity as agents or directors of the corporation. The bill does not allege and it is not argued that the defendant trustees are not a legal board of trustees if the board of directors which elected them was itself legally constituted.

3. The defendants next contend that the board of trustees are authorized by § 21 of the charter to purchase certificates other than so called "excess certificates." On the other hand the plaintiffs contend that the authority of the trustees is limited to the purchase of outstanding certificates, i. e. "excess certificates" held by certificate holders in excess of individual certificates of membership. We think the plaintiffs' construction of § 21 is too narrow; that section of the charter applicable to the question reads: "The money or property appropriated for this fund shall be used to purchase the outstanding certificates of the new corporation, or, under the direction of the board of directors, may be invested in other ways. . . . The trustees of the said fund shall have the power to hold an unlimited number of the certificates of the corporation." In the absence of a forbidding statute, a Massachusetts corporation may purchase its own stock, *Leonard* v. *Draper,* 187 Mass. 536, and it is not argued that this corporation or the trustees, under the statute, were not authorized by the statute to purchase at cost the "excess certificates." We think the statute

conferred authority upon the trustees to acquire under the direction of the board of directors and hold in the fund certificates of membership however classified, and that the right is not limited to a "power to receive an unlimited number of certificates" only by gift or bequest, and to add them to and to hold them in the fund.

4. The defendants next contend that the trustees are not bound in their voting of the certificates by any agreement or instructions of the board of directors or of the chamber itself. The charter grants to the trustees "the power to hold an unlimited number of the certificates of the corporation, and to vote the same and to receive dividends or interest upon the same, any provision of this charter or of the general law to the contrary notwithstanding." By reason of the power to vote the certificates, a duty is imposed on and an obligation is assumed by the trustees to vote the certificates so far as they are a part of the trust fund "for the general benefit of the new corporation." By reason of this provision of the charter, if not otherwise, the trustees are not mere depositaries of the funds of a naked trust, but have the active duty of voting the certificates with sound judgment and a wise regard for the general benefit of the corporation. This duty is a personal obligation, which may not be delegated and cannot be controlled by the corporation or by the board of directors.

5. The defendants further contend that the trustees of the trust fund have the right to vote the certificates of membership at any meeting, under § 13 of the charter, and at any meeting at which the certificate holders have a right to vote as distinct from other members of the corporation. In the absence of an express statute conferring the right, it is elementary law that a corporation cannot directly vote upon its own stock, or indirectly vote upon it through trustees who hold such stock for the use and benefit of the corporation, thus disturbing the voting equilibrium subsisting among its stockholders. *American Railway-Frog Co.* v. *Haven*, 101 Mass. 398. But the right is expressly conferred on the trustees of the trust fund by St. 1914, c. 82, as an amendment to the charter rights granted by St. 1909, c. 251. There is nothing in the bill to show that any or all of the certificate holding plaintiffs acquired their certificates before the

amendment to the charter, or that he or they did not request legislation or assent to the change in the charter affected by St. 1914, c. 82.

There is nothing in the bill or in St. 1914, c. 82, to warrant even an inference that any vested right of any one of the plaintiffs as a certificate owner under the charter of 1909 was without right impaired by St. 1914, c. 82, passed in amendment of the charter and of St. 1909, c. 251.

<div align="right">

*Decree affirmed with costs.*