ALBERT K. TAPPER & others *vs.* BOSTON CHAMBER OF COMMERCE & others.

Suffolk.   March 18, 1924. — May 22, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & WAIT, JJ.

*Boston Chamber of Commerce. Corporation,* By-laws and regulations. *Constitutional Law,* Due process of law.

Trustees who had acquired certificates of certificate-holding members of the Boston Chamber of Commerce in accordance with St. 1914, § 82, had a right to vote such certificates for what they deemed to be the general benefit of the corporation, and such right was not limited so long as they acted honestly and in good faith.

It would not be an act of such trustees in violation of their duty or in derogation of rights of certificate holders, or an abuse of the powers conferred upon them as trustees, to vote all the certificates owned by them in favor of cancelling and retiring all certificates of membership upon the payment from the treasury of the corporation of the sum of $200 and accrued interest to each holder of such a certificate, their intention being that thereafter there should be but one form of membership in the corporation.

Sts. 1909, c. 251, § 13; 1914, c. 82, are not repugnant to art. 5 of the Amendments to the Constitution of the United States or to art. 12 of the Declaration of Rights of the Constitution of the Commonwealth.

The fact that St. 1914, c. 82, was enacted without the knowledge of certificate holding members of the Boston Chamber of Commerce did not impair nor affect its constitutionality.

There was nothing in § 5 of the charter of the Boston Chamber of Commerce, St. 1909, c. 251, to prevent the trustees under the new § 21, added by St. 1914, c. 82, from voting upon the question of placing a mortgage upon the property of the corporation: the trustees had not only full power to vote the certificates but also, by the provisions of § 21, the same rights in the property of the corporation as other certificate holders.

Under art. 2, § 2, and art. 5, §§ 1, 4, of the by-laws of the Boston Chamber of Commerce, the directors had a right to make a charge to members who used the trading facilities referred to in § 7 of the charter.

BILL IN EQUITY, filed in the Superior Court on May 10, 1923, to enjoin the defendants from taking certain action at

meetings of the Boston Chamber of Commerce which the plaintiffs alleged would be illegal and contrary to the plaintiff's interests.

There was an agreed statement of facts. Material facts are described in the opinion. At the request of the parties, *O'Connell,* J., reported the case upon the pleadings and the agreed statement of facts for determination by this court.

*H. H. Pratt,* for the plaintiffs.

*R. G. Dodge,* (*J. Sidney Stone* with him,) for the defendants.

CROSBY, J.    This is a bill by five holders of certificates of membership in the defendant corporation, alleging that it is brought for themselves, and others similarly situated and entitled to join therein, against the defendant corporation, its president and directors, and certain other officers, the trustees of its trust fund, and certain individuals, members of the corporation other than certificate holders. It is alleged that the membership of the corporation consists of two classes, certificate-holding members and non-certificate-holding members; that its officers have called meetings of the members of each class at which certain action is to be taken and votes passed; that such acts and votes would be illegal and contrary to the interests of the plaintiffs. The prayers of the bill are that the defendants be enjoined and restrained from such action. The case is before this court upon a report from the Superior Court which contains the pleadings and an agreed statement of facts.

1. The defendant corporation and the Boston Merchants Association were existing corporations in 1909. In that year they were authorized by St. 1909, c. 251, to unite as one corporation. Section 6 of this statute provides for the issuance of not more than two thousand individual certificates of membership, the certificates to be of the par value of $200 each, and to bear interest at the rate of four per cent, each member being entitled to hold but one certificate except for temporary purposes. Section 12 provides for another class of members other than those holding certificates, the number to be fixed by the by-laws. Members of both classes are to be liable for the same dues; but the non-certificate-holding

members are to have no interest in the real estate or other property of the corporation, but are to have equal voting powers except in matters affecting the management of the property; they are entitled to all other rights and privileges of certificate-holding members except that they are not allowed the trading privileges and facilities of the corporation.

Section 13, as amended by Spec. St. 1919, c. 196, § 1, provides as follows: " The new corporation by concurrent vote of a two thirds majority of both certificate holding and other members present in person or by proxy and voting at separate meetings called for this specific purpose, notice of which meetings shall be mailed to each member not more than fifteen or less than ten days in advance, shall have the right, upon the payment of the sum of two hundred dollars and accrued interest to each certificate holder to cancel and retire all outstanding certificate holding memberships, upon such terms and conditions as shall be determined by said two thirds majority vote. In the event of the exercise of such right of cancellation there shall be thenceforth but one form of membership in said corporation, and each member, whether previously a certificate holding or other member, shall receive a certificate representing the same individual interest in all the property, rights and privileges of the new corporation . . . ."

By St. 1914, c. 82, a new section (21) was added to the charter (St. 1909, c. 251). This section provides in part that " The board of directors of the new corporation shall have the power and is hereby authorized to establish from the available funds or property of the corporation a trust fund for the general benefit of the new corporation. This fund shall be administered by a board of three trustees elected by the board of directors as hereinafter provided. . . . The money or property appropriated for this fund shall be used to purchase the outstanding certificates of the new corporation, or, under the direction of the board of directors, may be invested in other ways. The trustees of the trust fund so created are empowered to receive gifts and bequests and to add the same to the fund. The income

from the fund shall be paid annually or oftener into the general treasury of the chamber, and shall be treated in the same way as money coming from the payment of membership dues. The trustees of the said fund shall have the power to hold an unlimited number of the certificates of the corporation, and to vote the same and to receive dividends or interest upon the same, any provision of this charter or of the general law to the contrary notwithstanding. The trustees shall have power under the direction of the board of directors to change investments and to sell any property held by them in the trust fund, and to reinvest the proceeds, and to reissue the certificates of membership in the new corporation held by them, and to reinvest the proceeds thereof, and any purchaser of such certificates shall have the same rights, privileges and duties as if the said certificates were issued to him originally by the new corporation. In the event of liquidation, dissolution or distribution of the property of the new corporation, the trustees of the trust fund herein created shall receive their proportionate share of the sum or sums distributed among the certificate holders, based on the number of certificates held by them."

Section 21 was construed in the case of *Tapper* v. *Boston Chamber of Commerce*, 235 Mass. 209, 219, and the court held that the statute " conferred authority upon the trustees to acquire under the direction of the board of directors and hold in the fund certificates of membership however classified . . ." ; and that by reason of the power given to vote the certificates it is the duty of the trustees to vote them so far as they are a part of the trust fund " for the general benefit of the new corporation " as provided by § 21.

The record shows that the trustees have acquired outright nine hundred and one certificates, and by assignments (under which the original holders are to receive a four per cent bond of the par value of $200 secured by a mortgage on the real estate of the corporate defendant) seven hundred and seventy-one certificates, leaving out of the total number of two thousand only three hundred and twenty-eight.

It is agreed that " Continuously after said decision of

*Tapper* v. *Boston Chamber of Commerce,* the directors of the defendant corporation have considered plans to complete the retirement of the certificates of membership and the proposed exchange of second mortgage bonds therefor.   The directors of the defendant corporation have considered the retirement and cancellation of the certificates of membership to be for the advantage of said corporation because they consider that the rights which some of the owners of certificates of membership have asserted from time to time would interfere with the right of any members who did not hold certificates to take part in any matter relating to the policy of the defendant corporation when the decision involved any expenditure whatever and because they believe that it has been found undesirable for a corporation like the defendant corporation to have different classes of members with different rights and prerogatives, tending to prevent unity of action and whole-hearted coöperation most desirable for such an institution.   The plaintiffs rebut this contention."

It appears that, in April, 1923, notices of a special meeting to be held on May 3, 1923, " For the purpose of determining whether all outstanding certificates of membership shall be cancelled, and if so upon what terms and conditions," were sent to the holders of certificates of membership.   At the same time similar notices of a special meeting on May 4 were sent to members who were not certificate holders.

It is agreed that the trustees propose, if not prevented by this suit, to vote all the certificates owned by them, whether by assignment or otherwise, in favor of cancelling and retiring all certificates of membership upon the payment from the treasury of the corporation of the sum of $200 and accrued interest to each holder; it being intended that thereafter there shall be but one form of membership.   As the right of the trustees to vote the certificates held by them is expressly given by St. 1914, c. 82, and as that right has been affirmed by this court in *Tapper* v. *Boston Chamber of Commerce, supra,* that question is settled.   Their right to vote such certificates for what they deem to be the general benefit of the corporation is not limited so long as they act

honestly and in good faith. There is no allegation in the bill and nothing in the record to warrant a finding that they or the directors are actuated by any different motive.

The plaintiffs contend that the trustees, in acquiring the certificates for the purpose of voting them as they propose, have violated their duties, in derogation of the rights of the plaintiffs, and have abused the powers conferred upon them as trustees. This contention cannot be sustained: there is nothing to show that the proposed action is contrary to the general benefit of the corporation or of its certificate holders.

2. It is argued that St. 1909, c. 251, § 13, and St. 1914, c. 82, are repugnant to art. 5 of the Amendments to the Federal Constitution and to art. 12 of our Declaration of Rights. As to the Fifth Amendment, it was held many years ago that the first ten Articles of Amendment " were not intended to limit the powers of the State governments in respect to their own people, but to operate on the National Government alone." *Spies* v. *Illinois,* 123 U. S. 131, 166. *Commonwealth* v. *Leventhal,* 236 Mass. 516.

We are unable to discover that either of these statutes violates the rights of the plaintiffs guaranteed by art. 12 of the Declaration of Rights. The fact that St. 1914, c. 82, was enacted without their knowledge or consent does not impair or affect its constitutionality. The statute does not diminish their voting rights, nor give them proportionately a lesser interest in the corporate property. The Legislature had the right to amend the original charter of the corporation; the rights of the plaintiffs were subordinate to that right, and the Legislature was not bound to give notice to any of these parties. *Mayor & Aldermen of Worcester* v. *Norwich & Worcester Railroad,* 109 Mass. 103, 114. *Brownell* v. *Old Colony Railroad,* 164 Mass. 29. The statute only authorizes the trustees in the performance of their duties to vote the certificates as they deem it to be for the interest of the corporation. The constitutional rights of the plaintiffs are not thereby impaired.

It has long been settled that the Legislature may amend or alter the charter of a corporation unless such amendment or alteration will defeat or impair the object of the grant, or

vested rights under it.  G. L. c. 155, § 3.  *Commissioners on Inland Fisheries* v. *Holyoke Water Power Co.* 104 Mass. 446, 451.  *Selectmen of Norwood* v. *New York & New England Railroad,* 161 Mass. 259, 266.  *Commonwealth* v. *Boston & Northern Street Railway,* 212 Mass. 82.  *Looker* v. *Maynard,* 179 U. S. 46.

The transfer to the trustees of certificates by the original owners and the power of the trustees to vote them in accordance with § 21 deprive the plaintiffs of no constitutional right.  *Brightman* v. *Bates,* 175 Mass. 105, 111.  *Tapper* v. *Boston Chamber of Commerce, supra,* at page 218.  *Boston* v. *Treasurer and Receiver General,* 237 Mass. 403, 419.  The rights of the plaintiffs in the assets of the corporation are unaffected by St. 1914, c. 82.  The purchase of certificates by the trustees did not change the substantial rights of the certificate holders whose certificates were not purchased.  The interest of certificate holders in the property under § 13 of the original charter was always subject to extinguishment by the retirement of all certificates thereunder, and the use of the general funds could be employed for that purpose.

3. The corporation under § 5 of its charter is expressly authorized to mortgage its property.  The plaintiffs contend that only certificate holders are authorized to vote upon the question of placing a mortgage on the property and that the trustees have no right to vote thereon.  But for the reasons already stated, it is manifest that the trustees have that right; to hold otherwise would limit such voting to the holders of the three hundred and twenty-eight certificates now held by individual members.  The trustees have not only full power to vote the certificates but also, by the provisions of § 21, the same rights in the property of the corporation as other certificate holders.  If, as is proposed, the trustees vote the certificates held by them in favor of retiring all certificates, there is no reason why they may not also vote to issue a mortgage to secure the payment of bonds.  It being proposed that a meeting of each class of members shall be held and that separate votes be taken, the question, whether the non-holding certificate members are entitled to

vote upon the mortgage, will not necessarily arise if the trustees vote the certificates held by them in favor of such mortgage; yet there seems to be no objection to the taking of a vote by such members as an expression of their opinion upon the question.

As argued by the defendants, the retirement of the certificates will have been voted in the ordinary course of events before the mortgage is authorized. If a vote is passed to retire the certificates, in accordance with the provisions of § 13, they will then cease to be of further force or effect, except as entitling each owner to receive $200 in cash; and all members of the corporation will thereafter stand on the same footing, and have the same interest in the property of the corporation, and the same right to vote on the question of giving a second mortgage; and the trustees will cease to be certificate holders and will have no votes except as members of the corporation.

4. The remaining question relates to the power of the directors to make a charge to members who use the trading facilities referred to in § 7 of the charter. It is there stated that " Provision shall be made in the rules and by-laws of the new corporation for the continuation and regulation of the existing trade facilities." Section 12 provides that the members who do not hold certificates shall have all the rights and privileges of certificate holders other than the right to vote in matters affecting the management of the property, " except that they shall not be allowed to participate in the trading privileges and facilities " of the corporation.

Article 2, § 2, of the by-laws provides that certificate-holding members shall be given certificates entitling them among other things to participate in the trading privileges and facilities of the Chamber " . . . under such rules and regulations as may from time to time be established." Article 5 (§§ 1 and 4) gives the directors the management of the affairs of the Chamber, and the direction of its " commercial, industrial, public, and financial policies," subject to such instructions as may be given at duly called meetings of the Chamber, and the power to " adopt or amend rules and

regulations for the government and proper business conduct of the Chamber."

These by-laws are undoubtedly such as the corporation properly could adopt. There is nothing in the charter or by-laws which entitles the certificate-holding members to use the trading facilities without charge other than the payment of annual dues, or prohibits the making of such a charge if the directors deem it to be in the interest of the corporation. It is alleged in the bill that the directors propose to make a charge to members who use such facilities, in addition to the annual dues paid, which will be sufficient in the aggregate to cover the cost to the corporation of their maintenance. This action, the plaintiffs contend, would be in violation of their rights.

The agreed facts show that the annual cost to the corporation for the past four years for the maintenance of these facilities has averaged over $17,000; and that the average number of members using them is not over three hundred and fifty each year. The power given to the directors under art. 5, § 4, to "adopt or amend rules and regulations for the government and proper business conduct of the Chamber" makes it plain that they may regulate the terms and conditions upon which the trading facilities may be used by members and may fix a reasonable charge therefor. *St. Louis* v. *Western Union Telegraph Co.* 149 U. S. 465, 469. The payment of such a charge by the users to cover the cost of maintenance, instead of being unjust to any member would seem to be fair and equitable.

As the agreed facts fail to disclose any ground for equitable relief, the entry must be

*Bill dismissed with costs.*