## OPINION OF THE JUSTICES TO THE SENATE.

*Constitutional Law,* Impairment of the obligation of contracts, Due process ·of law. *Corporation,* Charter. *Contract,* What constitutes, With Commonwealth. *Hingham Water Company.*

A proposed statute amending § 11 of St. 1879, c. 139, the charter of the Hingham Water Company and authorizing the town of Hingham to acquire the property of the corporation without its assent in a manner and upon terms less favorable than those prescribed by the charter and not shown to provide full and fair compensation for such property,

would violate both the due process clause of the Fourteenth Amend-
ment to the Federal Constitution and art. 10 of the Declaration of
Rights of the Commonwealth.

St. 1879, c. 139, chartering the Hingham Water Company and giving the
town of Hingham power to buy its property upon terms therein pre-
scribed was not a contract between the corporation and the town, but
merely one with the Commonwealth and an amendment, provided it
did not violate the Fourteenth Amendment to the Federal Constitution,
would not impair its obligation within the prohibition in § 10 of art. 1
of that Constitution.

By accepting its charter, St. 1879, c. 139, the Hingham Water Company
did not impliedly assent to future amendment thereof by which, with-
out its consent, its property might be purchased by the town of Hing-
ham on terms less favorable than those specified in the charter and
not shown to provide full and fair compensation for such property.

On April 5, 1938, the Senate adopted the following order:

WHEREAS, The Hingham Water Company was incorpo-
rated and granted a franchise to supply water in the
town of Hingham by chapter one hundred and thirty-
nine of the acts of eighteen hundred and seventy-nine,
and was granted additional powers and its franchise ex-
tended by chapter fifty-nine of the acts of eighteen hun-
dred and eighty-one, chapter eighty-eight of the acts of
eighteen hundred and eighty-six, and chapter one hundred
and sixty-eight of the acts of nineteen hundred and
twenty-four (no action having been taken under chapter
four hundred and eighty-two of the acts of nineteen hun-
dred and fourteen), and thereafter acquired property
thereunder in the towns of Hingham, Hull, Cohasset and
Norwell and is now operating said property under said
acts; and

WHEREAS, At the time of the enactment of the original
act of incorporation of said company, section forty-one
of chapter sixty-eight of the General Statutes provided
that "Every act of incorporation passed after the elev-
enth day of March in the year one thousand eight hun-
dred and thirty-one, shall be subject to amendment,
alteration, or repeal, at the pleasure of the legislature
. . .", which provision in substance has been re-enacted
in successive general revisions of the statutes as Public
Statutes chapter one hundred and five, sections two and

three, Revised Laws chapter one hundred and nine, section three, and General Laws chapter one hundred and fifty-five, section three, and since November fifth, nineteen hundred and eighteen, has also appeared in Article LIX of the Amendments to the Constitution of the Commonwealth, and thus said provision, in substance, was in effect at the times of the acceptance by said company of the original act of incorporation and of all acts of extension and amendment thereof; and

WHEREAS, Section eleven of said chapter one hundred and thirty-nine of the acts of eighteen hundred and seventy-nine reads as follows: — "The town of Hingham shall have the right at any time during the continuance of the charter hereby granted, to purchase the corporate property, and all the rights and privileges of said company at the actual cost of the same, together with interest thereon at a rate not exceeding ten per centum per annum, said cost to include all actual loss or damage paid or suffered by said company for injury to person or property, deducting from said cost any and all dividends which may have been paid by said corporation, or at such a price as may be mutually agreed upon between said corporation and the town of Hingham; and the said corporation is authorized to make sale of the same, and this authority to purchase said franchise and property is granted on condition that the same is assented to by said town by a two-thirds vote of the voters present and voting thereon at any annual meeting, or at a legal meeting called for that purpose."; and

WHEREAS, The rights of purchase established by section eleven of the original act of incorporation above set out were continued and extended to apply to corporate property and rights acquired under the terms of said chapters fifty-nine of the acts of eighteen hundred and eighty-one, eighty-eight of the acts of eighteen hundred and eighty-six, and one hundred and sixty-eight of the acts of nineteen hundred and twenty-four; and

WHEREAS, There is pending before the General Court a bill printed as Senate number 406 entitled "An Act

Amending the Charter of the Hingham Water Company by Clarifying and Making More Definite Certain of its Provisions, and in Certain Other Respects", a copy of which is herewith submitted, which purports to amend section eleven of said chapter one hundred and thirty-nine of the acts of eighteen hundred and seventy-nine so that the method of computing the price to be paid for said proposed purchase and the interest thereon are set forth in said amended section eleven in definite terms and the method by which the town of Hingham may enforce the said right of purchase is definitely stated and so that, without derogating from its provisions relative to enforcement of a sale, the town and water company still are authorized to agree upon a price for the sale of said corporate property and rights; and

WHEREAS, Grave doubt exists as to the constitutionality of said bill, if enacted into law, accordingly, be it

ORDERED, That the Senate require the opinions of the Honorable the Justices of the Supreme Judicial Court on the following important questions of law:

1. Would the provisions of the bill printed as Senate number 406, if enacted into law, deprive, or enable the town of Hingham to deprive, The Hingham Water Company of liberty or property without due process of law, or deny to said company the equal protection of the laws, in violation of section one of Article XIV of the Amendments to the Constitution of the United States?

2. Would the provisions of section one of the bill printed as Senate number 406, if enacted into law, constitute a violation of the provision of Article X of Part the First of the Constitution of this Commonwealth as authorizing a taking of private property without providing reasonable compensation therefor?

3. Do chapter one hundred and thirty-nine of the acts of eighteen hundred and seventy-nine and certain amendments thereof, under which said Hingham Water Company is operating, set forth the terms of a contract between the town of Hingham and said company, the obligation of which would be impaired by the provisions of the

bill printed as Senate number 406, in violation of the provisions of section ten of Article I of the Constitution of the United States that no state shall pass any law impairing the obligation of contracts?

4. Would the provisions of the bill printed as Senate number 406, if enacted into law, constitute an amendment of the act of incorporation of said Hingham Water Company of a kind which was impliedly consented to by its acceptance of said act of incorporation and acts in amendment thereof so that the enactment of such provisions would be within the powers of the General Court and not in violation of the provisions of either section ten of Article I of the Constitution of the United States, or section one of Article XIV of the Amendments to the Constitution of the United States, or Article X of Part the First of the Constitution of the Commonwealth?

On April 8, 1938, the order was transmitted to the Justices, who, on April 20, 1938, returned the following answers:

To The Honorable the Senate of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions in an order adopted on April 5, 1938, copy of which is hereto annexed.

The proposed statute is in the form of an amendment to St. 1879, c. 139, whereby the Hingham Water Company was incorporated. By § 11 of that charter, the town of Hingham was empowered to purchase all the corporate property of the water company "at the actual cost of the same, together with interest thereon at a rate not exceeding ten per centum per annum, said cost to include all actual loss or damage paid or suffered by said company for injury to person or property, deducting from said cost any and all dividends which may have been paid," together with further incidental matters not here material. The proposed statute strikes out those provisions and establishes a new basis for payment in case the town of Hingham exercises its option to purchase the

corporate property of the water company. The basis thus established is a long and complicated computation founded on the actual cost of the corporate property year by year, including all loss and damage sustained by the corporation on account of injuries to person or property. From the amount of such actual cost at the end of the first twelve months' period following incorporation, all dividends declared and paid during such period are to be deducted. On the balance thus found, interest at the rate of five per cent for one year shall be computed. This process of computation is to be continued year by year until the time of purchase authorized by vote of the town. Upon such purchase, the town shall assume and agree to pay, and to indemnify the water company from liability on, any indebtedness of the corporation secured by mortgage or hypothecation or other encumbrance placed upon any of its property, and shall receive as part of the property purchased all funds set aside as a sinking fund established as security for meeting the obligations thus assumed by the town.

The proposed statute provides a method whereby the property of the water company can be taken by the town. That property cannot be taken except by eminent domain or by assent of the water company. The water company has given no assent to the sale of its property to the town, except under the terms prescribed by St. 1879, c. 139, as amended. The water company, by acceptance of its charter, entered into a contract with the Commonwealth. *Crease* v. *Babcock*, 23 Pick. 334, 340. By virtue of the reserved right to amend and repeal charters of corporations, the General Court may change the terms of such a charter provided there is no violation of other constitutional guaranties. The constitutional provisions prohibiting the taking of property without compensation, or without due process of law, stand firm against impairment by such amendment and repeal. *Commissioners on Inland Fisheries* v. *Holyoke Water Power Co.* 104 Mass. 446, 451; affirmed, *Holyoke Co.* v. *Lyman*, 15 Wall. 500. *Commonwealth* v. *Essex Co.* 13 Gray, 239, 253. *Commonwealth* v. *Boston & Northern*

*Street Railway,* 212 Mass. 82, 84.  *Tapper* v. *Boston Chamber of Commerce,* 249 Mass. 235, 241.

It does not appear that the town was a party to the contract between the water company and the Commonwealth created by St. 1879, c. 139, and its amendments.  The town merely has the right to purchase the property of the water company.  There are no provisions that that statute should be accepted by the town.  Moreover, the town is in general a governmental agency, and the authority conferred on it by the proposed statute is to be exercised only by vote of the town.  In these circumstances, the provision in the Constitution of the United States that no State shall pass any law impairing the obligation of contracts affords no protection to the water company independent of prohibitions against the taking of property without due process of law and without full compensation.  Property and rights acquired upon the faith of the charter cannot be taken away under the guise of repeal or amendment without full compensation.  The proposed method of ascertaining the payment to be made by the town for the property of the water company differs materially from the method prescribed in the charter to which the water company assented.  That method has already been quoted.  Its meaning is that the water company may demand a rate of interest as high as ten per cent per annum on the actual cost of its property, and no more, except that that rate of interest may be reduced by agreement.  The words used do not signify a reasonable or fair rate of interest, but a precise rate.  The rate of five per cent interest provided in the proposed bill is materially less than that specified in the original act.  To the lower rate the water company has not assented.

The method of the computation of the cost stated in the proposed bill is essentially different from that prescribed in the charter of the water company; it is less favorable to the water company.  The new act might be constitutional if it provided for the payment of full and complete compensation for the property of the water company and was not confiscatory.  It makes no provision for ascertaining

the value of the property which is to be taken. The complicated method of calculating the cost of the property with annual rests, plus an arbitrary rate of interest at five per cent, affords on its face no assurance of fair valuation. The assumption by the town of the indebtedness of the water company secured by mortgage placed on its property is payment in quite different form from that specified in the charter. This is coupled with a taking by the town of all funds set apart as a sinking fund established for the purpose of meeting the obligations assumed by the town. Apparently, the water company is to remain liable on its indebtedness secured by mortgage on its property, and yet is to transfer its sinking fund to the town as a part of its property in exchange for an unsecured obligation of the town to pay such indebtedness. We do not consider in this connection the rights of the holders of this indebtedness, since the facts are not set forth and no question is directed to that point.

It is manifest that the method prescribed by the proposed statute for ascertaining the amount to be paid by the town to the water company, in the event that the town shall exercise its right to purchase the property of the water company, is less favorable to the water company than the method established in said St. 1879, c. 139, and its amendments, under which the water company made its investment.

The result is that we answer "Yes" to questions 1 and 2, "No" to questions 3 and 4.

ARTHUR P. RUGG.
FRED T. FIELD.
CHARLES H. DONAHUE.
HENRY T. LUMMUS.
STANLEY E. QUA.
ARTHUR W. DOLAN.
LOUIS S. COX.