BENJAMIN F. WYETH *vs.* BOARD OF HEALTH OF THE CITY OF CAMBRIDGE.

Suffolk. November 20, 1908. — January 6, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Undertaker. Burial. Mandamus. Board of Health. Registration in Embalming. Constitutional Law*, Right to pursuit of happiness, Private rights, Delegation of legislative powers, Police power. *Practice, Civil*, Reservation by report.

The refusal of the board of health of a city to grant a license as an undertaker to one, who is shown to be qualified in other respects for the occupation, solely for the reason that he is not licensed as an embalmer is illegal, and, where it appears that the license, except for that reason, would have been granted, a peremptory writ of mandamus will be issued ordering the board of health to grant the license.

A rule made by the board of registration in embalming, assuming to act under authority of St. 1905, c. 473, § 6, that "No permits for removal, burial or disinterment shall be issued by boards of health, city or town clerks or selectmen of a town, or any other persons authorized to issue burial permits, to any person or persons who have not been registered and received a certificate from the State board of registration in embalming," is without foundation in law or reason, is a violation of the right of every one under the Constitution of the Commonwealth

to pursue any proper vocation to obtain a livelihood, and also is an unreasonable attempt to interfere with the private right to bury the body of a relative or friend, that is not allowable under the Constitution of the Commonwealth or the Constitution of the United States.

*It seems,* that, if St. 1905, c. 473, § 6, undertook to empower the board of registration in embalming to pass a rule that no boards of health or other persons authorized to issue burial permits should issue them to any person who has not registered and received a certificate from the board of registration in embalming, it would be held to be unconstitutional as assuming to delegate general legislative authority.

The power of the Legislature to exercise complete control of burials of the dead so far as is necessary for the protection of the public health and the promotion of the public safety is unquestioned, but, whether a statute directly forbidding the issuing of a burial license except to a person who has received a certificate as a registered embalmer could be upheld as such an exercise of the police power, may be doubted.

A report by a single justice to the full court of the questions of law arising upon a petition for a writ of mandamus addressed to the board of health of a city directing them to issue to the petitioner a license as an undertaker, which the respondents had refused to issue for the reason that the petitioner was not licensed as an embalmer, contained the following reservation: "If the refusal of the respondents to grant the petitioner a license as an undertaker solely for the reason that he is not licensed as an embalmer is unwarranted, improper, and illegal, a writ of mandamus is to issue; if it is legal and properly authorized under the law and constitution the petition is to be dismissed." *Held,* that by the terms of the report the question of discretion whether the writ should be granted must be taken to have been decided in favor of the petitioner, that the report was equivalent to a finding upon the answer and the agreed facts that the only reason for the respondents' refusal was that the petitioner was not licensed as an embalmer, and that, except for this, the respondents in the exercise of their judgment and discretion would have granted the license, and that, therefore, upon this court deciding that the reason given by the respondents for refusing the license was without foundation in law or reason, nothing remained to be done but to enter an order that a peremptory writ of mandamus should issue.

PETITION, filed on June 15, 1908, for a writ of mandamus addressed to the persons constituting the board of health of the city of Cambridge, commanding them to issue to the petitioner a license as an undertaker.

The case came on to be heard before *Knowlton,* C. J., who reserved it for determination by the full court in the following report: "After a hearing, and by agreement of parties, the questions of law arising upon the petition and answer and agreed statement of facts in this case are reported for the consideration of the full court. If the refusal of the respondents to grant the petitioner a license as an undertaker solely for the reason that he is not licensed as an embalmer is unwarranted,

improper, and illegal, a writ of mandamus is to issue; if it is legal and properly authorized under the law and constitution the petition is to be dismissed."

*A. P. Stone*, for the petitioner.

*G. A. A. Pevey*, for the respondents.

KNOWLTON, C. J.    This is a petition for a writ of mandamus to compel the respondents, the board of health of the city of Cambridge, to grant the petitioner a license as an undertaker. Among the facts agreed are the following:

"Second.    That the petitioner, Benjamin F. Wyeth, is an inhabitant of Cambridge, is an undertaker by trade, and has been for forty-six years engaged in the trade of undertaker in various capacities, and has carried on for some years past the business of undertaking under the name of Benjamin F. Wyeth; that said undertaking business as conducted by the petitioner is a profitable one, and it is his support and the support of his family; that the petitioner is the sexton of the First Church in Cambridge, and the members in attendance at that church and other residents of Cambridge and the vicinity have been accustomed from time to time to engage him to perform such services as may be required in connection with the burial of the dead.

" Third.    That the petitioner, Benjamin F. Wyeth, is a competent undertaker and is well versed in the duties and practices of that trade or business, except in so far as he is ignorant of the processes of embalming.

"Fourth.    That the petitioner, Benjamin F. Wyeth, does not hold himself out to the public as one skilled in the methods of embalming dead bodies, and has not and never has had, and has not applied for, a certificate or license from the board of registration in embalming to enable him to engage in the business of embalming dead bodies.

" Fifth.    That a large part of the petitioner's trade or business does not require a knowledge of embalming, and in many instances the petitioner is not required nor directed to embalm the bodies of the dead intrusted to his care.

" Sixth.    That in all cases in which the said Benjamin F. Wyeth has had occasion to have the bodies of the dead embalmed, he has, since January 1, 1906, procured the services of an embalmer duly registered by the board of registration in

embalming, or he has intrusted the work to some servant or agent in his employ who was duly registered as aforesaid.

" Seventh. That the respondents to this petition or their predecessors in office had, up to and including the first day of May, 1907, always given to the said Benjamin F. Wyeth a license to act as undertaker upon his application therefor."

From other facts in the case and from the respondent's answer, it appears that the only reason for refusing to grant the petitioner a license as an undertaker is that he is not licensed as an embalmer.  He cannot obtain a license as an embalmer without making application under Rule 2, § 1, adopted by the board of registration in embalming, and complying with the requirements of this section, which is as follows:

" The applicant must have taken a regular course at a reputable school of embalming whose course of instruction is satisfactory to this board, and must have had not less than a year and a half of experience in active work with a practising embalmer."

The question of law presented by the report of the single justice is whether the respondent's refusal to grant a license, solely for this reason, is legal.

The St. 1905, c. 473, is "An Act to Establish a Board of Registration in Embalming."   Under § 6 the board is to adopt " rules and regulations not inconsistent with the provisions of this act and the statutes of the Commonwealth governing the care and disposition of human dead bodies and the business of embalming."   Under the authority of this section the board has adopted rules and regulations whereby they assume to put the whole business of the management of funerals and the burial of the dead in the hands of persons holding a license as embalmers from this board.   The first part of Rule 9, § 2, is as follows : " No permits for removal, burial or disinterment shall be issued by boards of health, city or town clerks or selectmen of a town, or any other persons authorized to issue burial permits, to any person or persons who have not been registered and received a certificate from the State board of registration in embalming." Under this rule no one can bury lawfully the dead body of a former member of his family unless the permit for burial is obtained by a licensee of this board.   No one can perform the

ordinary duties of an undertaker without first having procured a license as an embalmer.  No one can obtain a permit for the disinterment of a dead body for any cause, at any time however long after the burial, unless he is a licensed embalmer.  Surely the fitness of a person to receive a permit for the disinterment of a dead body cannot depend upon his knowledge or ignorance of the process of embalming.  The question is presented whether there is any warrant under the Constitution and the laws for this interference with the liberties of the people.

The respondents in their answer rest their defense largely upon the action of the board of registration in embalming, and adopt as their own the views upon which this action presumably was founded.

The right to enjoy life, liberty and the pursuit of happiness is secured to every one under the Constitution of Massachusetts.  This includes the right to pursue any proper vocation to obtain a livelihood.  Substantially the same right is secured also by the Constitution of the United States, which does not permit a State to deprive any person of life, liberty or property without due process of law.  The nature of this right has been stated and illustrated in many cases.  *Commonwealth* v. *Strauss,* 191 Mass. 545.  *Commonwealth* v. *Perry,* 155 Mass. 117.  *Winthrop* v. *New England Chocolate Co.* 180 Mass. 464.  *Austin* v. *Murray,* 16 Pick. 121.  *Lochner* v. *New York,* 198 U. S. 45.  *Allgeyer* v. *Louisiana,* 165 U. S. 578.  *Yick Wo* v. *Hopkins,* 118 U. S. 356.  *Minnesota* v. *Barber,* 136 U. S. 313.

There is no doubt that the refusal to permit one to engage in the business of an undertaker is a violation of this right, unless there is some good reason for the refusal, and the refusal to permit one to bury the dead body of his relative or friend, except under an unreasonable limitation, is also an interference with a private right that is not allowable under the Constitution of the Commonwealth or the Constitution of the United States.

In the exercise of the police power, such kinds of business as require regulation in the interest of the public health, the public safety or the public morals, and perhaps in a strict sense in the interest of the public welfare, may be regulated by the State, and no other interference of the public to the detriment of an individual is permissible.

The burial of the dead has such relations to the public health that it well may be regulated by law. In possible aspects of it its regulation may be made in the interest of the public morals. For the detection of crimes which result in death there well may be regulation in the interest of the public safety. In the exercise of the police power the Legislature of this State has made elaborate provisions and strict regulations covering these subjects. R. L. c. 78, §§ 37 to 44 inclusive; c. 29, §§ 6–8, 10–12, 15. Of its power to exercise complete control of burials of the dead, so far as is necessary for the protection of the public health and the promotion of the public safety, there is no question.

No argument has been addressed to us to show that the general embalming of dead bodies is necessary for the preservation of the public health, and we know of no facts that indicate such a necessity. Except in those cases where embalming is desired for a special reason, we know of nothing connected with the duties of an undertaker that calls for the work of a licensed embalmer. When such work is desired, a proper person can be procured to perform it. In cases generally it is not an essential part of the duties of an undertaker, and it has no relation to the public health.

The only particular in which the respondents have suggested, either in their answer or their argument, that performance of an undertaker's duties by a licensed embalmer would tend to promote the public health, is that an embalmer would be more likely to discover that a deceased person died of a contagious disease than an undertaker who is not an embalmer. To use the language of the agreed statement of facts, "In the opinion of the respondent board of health these rules for preserving and embalming human dead bodies have a tendency to and do increase, on the part of the undertaker, the knowledge of the nature of the disease from which the party deceased may have suffered, and which may have caused death." There is certainly a grave reason to doubt the correctness of this opinion. No evidence is furnished that, through his knowledge of the business of embalming, one can form an opinion which an ordinary undertaker of experience could not form of the cause of death of a person whose body is seen by him. But if there may be some slight increase of knowledge, from this source, to one preparing a human

body for burial, its relation to the public health, if any, is too remote to be made a foundation for legislation or regulation. As was said in the opinion in *Lochner* v. *New York*, 198 U. S. 45, 57, "the mere assertion that the subject relates though but in a remote degree to the public health does not render the enactment valid. The act must have a more direct relation, as a means to an end, and the end itself must be appropriate and legitimate, before an act can be held to be valid which interferes with the general right of an individual to be free in his person and in his power to contract in relation to his own labor." From such a possibility no such benefit could come as to justify a requirement that all human bodies should be embalmed for the purpose of procuring such information in regard to the cause of death as can be acquired through the process of embalming, or a requirement that an embalmer should always be employed as undertaker for the chance of a valuable discovery from his observation, without his using the process of embalming. The law recognizes direct ways of ascertaining whether death was from a contagious disease, without employing an embalmer for that purpose. R. L. c. 29, §§ 1–6, 10–12. These ways seem a thousandfold more important and reliable than any possible knowledge that an embalmer might have from his training in that business, beyond the knowledge of an undertaker of experience who was not an embalmer.

We can see no such connection between requiring all undertakers to be licensed embalmers and the promotion of the public health as to bring the making of this regulation by the board of registration in embalming, or the refusal of a license by the board of health on account of the regulation within the exercise of the police power by the State. If such a regulation had been made by an act of the Legislature, with all the strong presumptions of constitutionality which attach to legislative action, we should hesitate to affirm the constitutionality of the act. But action by such a board, under mere general authority to make rules and regulations, does not carry with it these strong presumptions. We consider this action without foundation in law or reason, and in violation of the constitutional rights of our citizens.

A statute of New York, which provided, among other things, that no person should engage in the business of undertaking

unless he had been duly licensed as an embalmer, was held unconstitutional by a unanimous decision in the appellate division of the Supreme Court of that State. *People* v. *Ringe*. 125 App. Div. (N. Y.) 592.

From another point of view the rules and regulations of the board of registration in embalming, relied on by the respondents as an important reason for their decision, are invalid. In *Brodbine* v. *Revere*, 182 Mass. 598, 600, is this language: " It is well established in this Commonwealth and elsewhere, that the Legislature cannot delegate the power to make laws, conferred upon it by a constitution like that of Massachusetts." Then follow numerous citations from different States, with the words: " This doctrine is held by the courts almost universally." None of the cases referred to later in the opinion, in which there was a delegation of legislative authority for a local or special purpose or in matters of administration, and none of the cases which have been decided since, and which are referred to in *Commonwealth* v. *Kingsbury*, 199 Mass. 542, go far enough to legalize a delegation of authority to change a general law for all the people of the Commonwealth, with no local or special reason for seeking the aid of an administrative board, as the rule about the issuing of permits and some of the other rules of this board purport to change the general laws on this subject for all the people in every city and town in the Commonwealth. If the statute were construed to authorize the making of such rules, it would be held unconstitutional as assuming to delegate general legislative authority.

We decide that the refusal of the respondents to grant the petitioner a license as an undertaker, solely for the reason that he is not licensed as an embalmer, is unwarranted, improper and illegal. According to the report, upon this determination of the question of law, a writ of mandamus is to issue. The case being on the law side of the court, only questions of law could be reported to the full court, and by the terms of the report the question of discretion whether to grant the writ must be taken to have been decided in favor of the petitioner. The report is equivalent to a finding upon the answer and the facts agreed that the only reason for the respondents' refusal was that the petitioner was not licensed as an embalmer, and that, except

for this, the respondents in the exercise of their judgment and discretion would have granted the license. Upon these facts nothing remains but to enter the order.

*Peremptory writ of mandamus to issue.*