### OPINION OF THE JUSTICES TO THE SENATE.

*Cemetery.   Constitutional Law,* Police power, Cemetery.   *Corporation,*
   Cemetery corporation.

A proposed statute purporting to apply to any "cemetery association or
   other agency owning, maintaining or operating a cemetery" would be
   broad enough to include all public and private corporations, religious
   societies, and individuals owning, maintaining or operating cemeteries.
Prohibiting all agencies owning, maintaining or operating cemeteries and
   their officers, agents and employees from selling or engaging in the
   business of selling monuments for cemetery lots would have no rational
   tendency to promote the safety, health, morals or general welfare of
   the public and would not be a valid exercise of the police power; and
   a proposed statute imposing such a prohibition without distinction
   among the agencies as to whether or not they were subject to the
   control of the General Court on grounds apart from the police power
   would be unconstitutional.
Selling of monuments is not an essential part of the maintenance of a
   cemetery.
In general, and subject to the circumstances of its original charter, the
   General Court has power to enact legislation amending the charter
   of a cemetery corporation to provide that it shall not engage in the
   selling of monuments for cemetery lots.

On April 14, 1948, the Senate adopted, and on April 16,
1948, transmitted to the Justices, the following order:

WHEREAS, There is pending before the General Court a
bill printed as Senate 462, being An Act relative to the
sale of monuments for cemetery lots, a copy of which is
submitted herewith; and

WHEREAS, Grave doubt exists as to the constitutionality
of said bill if enacted into law; therefore be it

ORDERED, That the opinions of the Honorable the Justices
of the Supreme Judicial Court be required by the Senate
on the following important questions of law:

1.   Is it constitutionally competent for the General
Court to regulate cemeteries substantially as provided in
said bill?

2.   Is it constitutionally competent for the General Court
to regulate the officers, agents, and employees of ceme-
teries substantially as provided in said bill?

3. May the General Court enact legislation amending the charter of a cemetery corporation to provide that it shall not engage in the selling of monuments for cemetery lots?

4. May the General Court enact legislation that no cemetery corporation, association or agency, or any such corporation, association or agency, shall by itself or its agents or servants engage in the business of selling monuments for cemetery lots at any time?

5. Is an association operating a cemetery affected with such a public interest that the General Court may enact legislation prohibiting it from engaging in any business other than the operation of a cemetery?

On April 27, 1948, the Justices sent the following answers:

To the Honorable Senate of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions set forth in an order adopted by the Senate on April 14, 1948, and transmitted to the Justices on April 16, 1948. A copy of the order is hereto annexed. The questions submitted relate to a bill now pending in the General Court (Senate, No. 462) which is entitled "An Act relative to the sale of monuments for cemetery lots" and which it is proposed to insert as § 430 in c. 114 of the General Laws.

The proposed act reads as follows: "No cemetery association or other agency owning, maintaining or operating a cemetery, or any officer, agent or employee thereof, shall sell or engage in the business of selling monuments for cemetery lots."

The history of cemeteries in this Commonwealth was investigated in *Mount Hope Cemetery* v. *Boston*, 158 Mass. 509, at pages 513–517. From the discussion in that case, as well as from other decisions and from statutes long in force, it appears that cemeteries have been, and presumably still are, owned and operated not only by municipal corporations but also by corporations chartered for the purpose by

general or special laws, by religious corporations, by unincorporated religious societies, and by private individuals, whether acting as trustees or in their individual capacities. See *Commonwealth* v. *Viall*, 2 Allen, 512; *Sohier* v. *Trinity Church*, 109 Mass. 1; *Woodlawn Cemetery* v. *Everett*, 118 Mass. 354; *Garden Cemetery Corp.* v. *Baker*, 218 Mass. 339: *Trefry* v. *Younger*, 226 Mass. 5; *Weiss* v. *Mayor & City Council of Woburn*, 263 Mass. 30; *Proprietors of the Cemetery of Mount Auburn* v. *Unemployment Compensation Commission*, 305 Mass. 288; G. L. (Ter. Ed.) c. 114, § 1, as amended by St. 1936, c. 319, § 1, §§ 10, 16, 17, 18; c. 180, § 9A. It is true that G. L. (Ter. Ed.) c. 114, § 43A, inserted by St. 1936, c. 319, § 6, provides that "No cemetery established on or after July first, nineteen hundred and thirty-six, shall be owned, maintained or operated except by a municipality or other political subdivision of the commonwealth, a church, a religious or charitable society, or by a cemetery association incorporated as provided in section one, nor shall such a cemetery be maintained or operated for the purpose of private profit or gain, directly or indirectly, to any director, officer or member of the cemetery association or other agency owning, maintaining and operating the same," but the same section also provides that "A cemetery lawfully established prior to said date may continue to be owned, maintained and operated under the form of organization adopted therefor." Section 7 of the 1936 act preserves "any vested rights of any cemetery association or other agency owning, maintaining and operating a cemetery . . . immediately prior" to the effective date of the act but makes the provisions of the 1936 act applicable, except as otherwise provided therein, to all "cemetery associations or other agencies" owning, maintaining, and operating cemeteries.

As we construe the proposed act, the words "No cemetery association or other agency owning, maintaining or operating a cemetery . . ." are broad enough to include all public or private corporations, religious societies, and individuals owning, maintaining, or operating a cemetery. It therefore becomes necessary to bear in mind in answering the questions

all of these differing methods by which a cemetery may be owned or operated.

The status of municipally owned cemeteries need not be discussed at length. We think it at least seriously doubtful whether any municipality now has any authority to sell monuments. In *Opinion of the Justices*, 155 Mass. 598, a majority of the Justices advised that the General Court had no power to authorize cities and towns to engage in trade. This remains the rule, subject to some exception in case of necessities of life in times of emergency. *Opinion of the Justices*, 182 Mass. 605. *Opinion of the Justices*, 211 Mass. 624, 628. *MacRae* v. *Selectmen of Concord*, 296 Mass. 394, 396-397. Art. 47 of the Amendments to the Constitution. If any municipality does have authority to sell monuments, it would seem that the superior power vested in the General Court to control municipal government would make it possible for the General Court to deprive a municipal government of that authority. *Weymouth & Braintree Fire District* v. *County Commissioners of Norfolk*, 108 Mass. 142. *Coolidge* v. *Brookline*, 114 Mass. 592, 596-597. *White* v. *Treasurer of Wayland*, 273 Mass. 468, 470. *Opinion of the Justices*, 293 Mass. 589, 602-603. *Adie* v. *Mayor of Holyoke*, 303 Mass. 295, 298-299. But some activities of municipalities, including cemeteries, are conducted in a corporate and not in a governmental capacity, so that it might be necessary to guard against depriving the municipality of property without due process of law. *Mount Hope Cemetery* v. *Boston*, 158 Mass. 509, 519. *Higginson* v. *Treasurer & School House Commissioners of Boston*, 212 Mass. 583, 585. We do not deal with these matters, since we are of opinion that the proposed act would be invalid because of its effect upon agencies maintaining cemeteries other than municipalities, and because we regard the proposed act in its proposed form as an indivisible unit.

It seems plain that the enterprise of operating a cemetery is distinct from, and need not be associated with, "the business of selling monuments for cemetery lots." A cemetery may be operated successfully and in full performance of all its obligations to lot owners and others without selling monu-

ments. The management of cemeteries is a matter of strong public interest, as are all matters in connection with the burial of the dead. No doubt cemeteries are subject to a large measure of regulation not only to preserve health but also to prevent the concealment of crime, to secure suitable places for permanent and visible records of the departed to which the living may repair to show their respect to the dead, and to satisfy generally accepted ideas of decency and of respect for the dignity of a human being even after the soul has departed from the body. The power to regulate places of burial, particularly with reference to considerations of health, has been recognized in a number of our decisions. *Sohier* v. *Trinity Church*, 109 Mass. 1, 22. *Woodlawn Cemetery* v. *Everett*, 118 Mass. 354, 362–363. *Foster* v. *Mayor of Beverly*, 315 Mass. 567, 572. See *Canton* v. *Westbourne Cemetery Corp.* 251 Mass. 128. On the other hand, monuments for cemetery lots are manufactured products like other manufactured products. If designed for sale they are not commonly built on the cemetery lot. They are fabricated wherever it is most convenient to fabricate them and are simply moved to the place where they are to stand as other fabricated articles are moved to the place where they are to be used or consumed. Until finally set in position they are personal property and are bought and sold like other personal property. It is not easy to perceive reasons justifying a higher degree of regulation of the business of selling monuments than of commercial enterprises in general. The selling of monuments is one of those occupations in which men either singly or in association have a right to engage as part of the liberty secured to them by arts. 1, 10, and 12 of the Declaration of Rights. *O'Keeffe* v. *Somerville*, 190 Mass. 110, 114. *Wyeth* v. *Cambridge Board of Health*, 200 Mass. 474, 478. *Holcombe* v. *Creamer*, 231 Mass. 99, 108–109. *Opinion of the Justices*, 247 Mass. 589, 593. *McMurdo* v. *Getter*, 298 Mass. 363, 365–366.

Underlying to a greater or less extent all the questions propounded in the order is the question whether the power granted to the General Court by Part II, c. 1, § 1, art. 4, of the Constitution to make, ordain, and establish all

manner of wholesome and reasonable laws as they shall judge to be for the good and welfare of the Commonwealth — the so called police power — will support the proposed act as applied to every "agency" owning, maintaining, or operating a cemetery, including churches, unincorporated religious societies and individuals as well as corporations. Any difficulty in reaching a correct conclusion on this issue is due largely to the fact that the proposed act touches both agencies operating cemeteries which are subject to a substantial degree of special and peculiar regulation and the business of selling monuments which presents no occasion for special or peculiar regulation. Nevertheless, the test is the same as that to which resort is generally had to determine the constitutional validity of restrictions upon the carrying on of otherwise lawful occupations, and that is whether the act has a rational tendency to promote the safety, health, morals, and general welfare of the public. *Commonwealth* v. *Strauss*, 191 Mass. 545, 550–551. *Wyeth* v. *Cambridge Board of Health*, 200 Mass. 474, 478. *Commonwealth* v. *Libbey*, 216 Mass. 356, 358. "The nature and extent of the public interest and of the exertion of the police power touching it are always a subject for judicial inquiry." *Opinion of the Justices*, 247 Mass. 589, 593. We have been unable to perceive in the proposed act any rational tendency to promote the safety, health, morals, or general welfare of the public. Certainly it is not a health regulation. We do not see what evil arises if any individual or a religious society owning or operating a cemetery also sells monuments, perhaps even merely as a convenience to the public and not for profit, since the proposed act makes no distinction in this respect. It is common for an individual or group of individuals to engage in more than one lawful occupation. And we see no incompatibility between the two occupations here involved which might be thought to operate to the public detriment. If it is suggested that a bereaved family seeking a place to bury their dead might possibly be exposed to undesirable importunity in the matter of purchase of a monument or might be discriminated against for refusal to buy, it might

equally well be argued that for similar reasons an undertaker should be forbidden to sell caskets or a lawyer to act as administrator. Equal grounds exist for the separation of many forms of activity which are commonly carried on together without objection and to the general convenience of the public. The reason just suggested for the proposed act seems fanciful rather than real, but we have been unable to think of any other object to be promoted, and neither the order of the Senate nor the proposed act discloses any. If any evils lurk in the association of a cemetery with the selling of monuments we would suppose that they could be met by direct attack without the sweeping prohibitions contained in the proposed act. The proposed act is especially drastic in its effect upon officers, agents, and employees. In this respect it seems a regulation more of sellers of monuments than of cemeteries. Under this part of the act no seller of monuments could become a member of a standing committee or a vestryman or warden or even sing for pay in the choir of a church that owned a cemetery, even though he had nothing whatever to do with the cemetery. Such restrictions upon persons carrying on a lawful occupation seem to us unrelated to any public good and unreasonable. For the foregoing causes we are of opinion that the proposed act would not constitute a valid exercise of the police power. *Wyeth* v. *Cambridge Board of Health*, 200 Mass. 474. *Opinion of the Justices*, 300 Mass. 615. *Sperry & Hutchinson Co.* v. *Director of the Division on the Necessaries of Life*, 307 Mass. 408. We think the proposed act is distinguishable from those held valid in *Attorney General* v. *Prudential Ins. Co.* 310 Mass. 762, and *Merit Oil Co.* v. *Director of the Division on the Necessaries of Life*, 319 Mass. 301.

It is provided by G. L. (Ter. Ed.) c. 155, § 3, that "Every act of incorporation passed since March eleventh, eighteen hundred and thirty-one, shall be subject to amendment, alteration or repeal by the general court," and that "All corporations organized under general laws shall be subject to such laws as may be hereafter passed affecting or altering their corporate rights or duties or dissolving them." See

art. 59 of the Amendments to the Constitution. These provisions permit the amendment within a wide range of such corporate charters as are subject to them, at least to the extent of such amendments as "will not defeat or substantially impair the object of the grant, or any rights which have vested under it." *Commissioners on Inland Fisheries* v. *Holyoke Water Power Co.* 104 Mass. 446, 451, *S. C. Holyoke Co.* v. *Lyman,* 15 Wall. 500. *Parker* v. *Metropolitan Railroad,* 109 Mass. 506, 508. *Woodward* v. *Central Vermont Railway,* 180 Mass. 599, 603–604. *Granara* v. *Italian Catholic Cemetery Association,* 218 Mass. 387. *Tapper* v. *Boston Chamber of Commerce,* 249 Mass. 235, 240–241. Inasmuch as we are of the opinion, as already stated, that the selling of monuments is not an essential part of the maintenance of a cemetery, we believe that in general the Legislature may amend the charter of a cemetery corporation to provide that it shall not engage in the business of selling monuments. We make this statement without having before us the charters of cemetery corporations. Some of them might contain provisions attaching importance to the sale of monuments. We must also direct attention to the fact that many cemeteries in this Commonwealth are very old and for aught we know some may have been incorporated before either of the statutory provisions just quoted took effect. It might also be necessary to provide some means for disposing of stocks of monuments on hand in order to avoid practical confiscation of them. The proposed act seems to make no allowance for this. We do not believe that the provisions just quoted would render the presently proposed act valid even as to cemeteries incorporated after the provisions took effect, since we think that the act, if passed, would constitute an indivisible unit, and it would not be possible to say that the General Court intended it to apply to a single group of cemetery associations or agencies if it could not apply to others according to its terms.

Construing the questions, except question 3, as intended to refer to all corporations, associations, and agencies now legally competent to operate cemeteries, we answer ques-

tions 1, 2, 4, and 5 in the negative and question 3 in the affirmative, subject as to question 3 to the qualifications hereinbefore stated.

STANLEY E. QUA.
HENRY T. LUMMUS.
ARTHUR W. DOLAN.
JAMES J. RONAN.
RAYMOND S. WILKINS.
JOHN V. SPALDING.
HAROLD P. WILLIAMS.