# The Aetna Casualty and Surety Company & others *vs.* Commissioner of Insurance.

Suffolk.    October 26, 1970. — November 9, 1970.

Present: Spalding, Cutter, Spiegel, Reardon, & Quirico, JJ.

*Insurance*, Rating, Motor vehicle liability insurance.  *Constitutional Law*, Insurance rating, Due process of law, Severability.  *Jurisdiction*, Justiciable question, Rate fixing.  *Equity Jurisdiction*, Declaratory relief.

The bill in a suit in equity against the Commissioner of Insurance by companies licensed to sell automobile property damage liability insurance, for a declaratory decree that the provision of St. 1970, c. 670, § 6, requiring the 1971 rates for such insurance to be "at least fifteen per cent lower" than the rates for such coverage in 1970 was confiscatory and therefore unconstitutional, alleged the existence of an actual controversy of a justiciable nature, and was not demurrable. [276]

A legislative fixing of rates may be taken to be a determination that they are nonconfiscatory with or without a declaration to that effect in the statute. [277]

The provision of St. 1970, c. 670, § 6, that all the reduced rates of automobile insurance coverages fixed thereby for 1971 "shall be deemed and accepted as adequate, just, reasonable and nondiscriminatory," did not and could not exempt the rates from judicial review on the law and the facts as to whether they were confiscatory and therefore unconstitutional. [277]

In a suit in equity against the Commissioner of Insurance, by companies licensed to sell automobile property damage liability insurance, for a declaratory decree that the rates fixed for such insurance for the year 1971 by St. 1970, c. 670, § 6, were unconstitutional because confiscatory, the bill, while it alleged the effect of the rates on all the plaintiffs in the aggregate, also included allegations of the effect of the rates on each individual plaintiff, and was sufficient to entitle the plaintiffs to relief [278–279]; the bill was not demurrable on the ground that it contained only allegations limited to automobile property damage liability insurance and did not consider the "overall automobile insurance situation" of the companies, since the statutes respecting automobile liability insurance treat separately each type of coverage for rate purposes [279].

While the Commonwealth has the power to regulate the insurance business and to prescribe the rates which may be charged for insurance,

The Aetna Casualty & Surety Co. *v.* Commissioner of Insurance.

it may not constitutionally fix rates which are so low that the insurers engaging in the business can do so only at a loss. [280–281]

Rates for automobile property damage liability insurance for the year 1971 as fixed by St. 1970, c. 680, § 6, which required a fifteen percent reduction from the rates in effect for the year 1970 and which, according to facts alleged in a suit in equity by insurance companies selling such insurance and admitted by the Commissioner of Insurance, would produce an underwriting loss to the plaintiffs exceeding $34,000,000, were confiscatory and therefore unconstitutional. [281]

Under the severability clause, § 11, of St. 1970, c. 670, this court's decision, that § 6 was unconstitutional by reason of fixing confiscatory rates for automobile property damage liability insurance, did not impair any of the remaining provisions of the statute. [281]

Under G. L. c. 175, § 113C, as amended by St. 1970, c. 670, § 9, the 1971 rates for automobile property damage liability insurance, to a limit of $5,000 offered in conjunction with compulsory bodily injury coverage, were subject to the approval of the Commissioner of Insurance under G. L. c. 175, § 113B, without regard to St. 1970, c. 670, § 6, and the rates for property damage liability insurance for limits in excess of $5,000 must be fixed in accordance with applicable provisions of the General Laws, without regard to St. 1970, c. 670, § 6. [281–282]

BILL IN EQUITY filed in the Supreme Judicial Court for the county of Suffolk on September 10, 1970.

The case was reserved and reported by *Quirico*, J.

*Herbert P. Wilkins* (*Acheson H. Callaghan, Jr.*, with him) for the plaintiffs.

*Walter H. Mayo, III*, Assistant Attorney General, for the Commissioner of Insurance.

QUIRICO, J. This is a bill for declaratory and other relief concerning the rates which may be charged for automobile property damage liability insurance in the Commonwealth for the year 1971. The plaintiffs are seventy companies licensed to sell such insurance in the Commonwealth and a rating organization licensed under G. L. c. 175A to represent them with respect to such insurance. The defendant (Commissioner) is the Commissioner of Insurance for the Commonwealth.

The plaintiffs seek a declaration that a portion of St. 1970, c. 670, § 6, purporting to require that the 1971 rates for automobile insurance, including property damage liability insurance, "shall be at least fifteen per cent lower than all rates for such coverages now in effect for the year nineteen

hundred and seventy" is unconstitutional because confiscatory; and they seek further declarations concerning the duty of the Commissioner with respect to such rates.

The case was reserved and reported by the single justice without decision upon the bill and the Commissioner's demurrer. The Commissioner expressly waived his right to file an answer and to an evidentiary hearing after a ruling on the demurrer. He admitted "for the purposes of the instant case only, to all the facts . . . which are well pleaded." We summarize the facts thus alleged by the plaintiffs and admitted by the Commissioner.

The plaintiffs have written more than 86% of all the property damage liability insurance in effect in the Commonwealth in 1970. Each plaintiff desires to write such insurance in the Commonwealth in 1971 if, among other things, the premiums they are permitted to charge therefor are adequate, just, reasonable and nondiscriminatory. They bring this bill on behalf of themselves and other companies authorized and desiring to write such insurance.

For each of the years 1967 through 1970 the Commissioner fixed rates for property damage liability insurance coverage up to $5,000, and the plaintiffs filed rates for coverage in excess of $5,000. The rates remained unchanged during all of that period.[1] A controversy has now arisen between the plaintiffs and the Commissioner over the rates for such insurance for the year 1971. This controversy arises from St. 1970, c. 670, which provides in part in § 6 thereof that the rates which may be charged in 1971 for property damage liability insurance and certain other automobile insurance "shall be at least fifteen per cent lower than all rates for such coverages now in effect for the year nineteen hundred and seventy."

On the basis of the aggregate experience of all companies

---

[1] The Commissioner has ordered that the 1969 rates for coverage up to $5,000 be continued into 1970. The plaintiffs are charging at that rate, but they have taken an appeal from the Commissioner's order, contending that the 1970 rates should be up to 25.4% higher than the 1969 rates. That appeal is still pending before this court, and we make no intimation of the ultimate decision thereon. The words "1970 rates" as used herein refer to the rates which were in effect in 1969.

writing both property damage and compulsory motor vehicle liability insurance in the Commonwealth (Companies) the property damage rates in effect in 1969 resulted in a total underwriting loss of $10,256,016 to them for that year.[2] The words "underwriting loss" represent the excess of the total of losses incurred, including allocated claim expenses, and of expenses other than losses, over the total premiums for the year, limited to property damage insurance.

If the property damage rates and total premiums for 1971 are the same as they were in 1969 the Companies would sustain an underwriting loss of over $20,500,000 on such business. This estimate is based on the assumption that in 1971 the accident frequency (number of claims per 100 vehicles) and expenses other than losses would remain substantially the same as in 1969, but that the average cost of claims would increase at the rate of 7.2% per year from 1969 to 1971. This rate of increase in cost of claims is the average of such increase for the years 1964 through 1969. If the same assumptions and computations as above are made for 1971 except that the property damage rates and total premiums are reduced by 15%, that being the minimum reduction prescribed by St. 1970, c. 670, § 6, the Companies would sustain an underwriting loss estimated at $34,699,100 for the year. None of the computations or estimates stated above includes any allowance for profit to the Companies.[3]

All of the computations or estimates of underwriting

---

[2] If the expenses other than losses were computed at the ratio of expense-to-premiums for nonparticipating stock companies, the 1969 underwriting loss for all the Companies would be about $12,350,000.

[3] The 1969 underwriting loss and one of the estimates of 1971 underwriting loss are computed as follows:

|  | 1969 Rates | Assumed 1971 Rates at 15% less than 1969 |
|---|---|---|
| 1. Losses incurred and loss expense allocated | $69,937,909 | $80,358,657* |
| 2. Other expenses incurred | 33,800,345 | 33,800,345 |
| 3. Total losses and expenses | $103,738,254 | $114,159,002 |
| 4. Less premiums | 93,482,238 | 79,459,902 |
| 5. Underwriting Loss for Year | $ 10,256,016 | $ 34,699,100 |

* This figure is increased at rate of 7.2% per year over 1969.

losses contained in this statement of facts are based on the aggregate experience of all companies writing property damage liability insurance and issuing compulsory motor vehicle liability policies in this Commonwealth. Based on that aggregate experience and upon the experience of each plaintiff (or group of plaintiffs operated jointly as a group) each such plaintiff or group would receive a lesser amount of premium dollars in 1971 from property damage liability insurance than it would be required to pay out for losses incurred under such coverage and for expenses properly allocated to such business, if the premiums for 1971 were 15% lower than those they are now charging for such insurance in the calendar year 1970.

We now turn to a consideration of the several legal questions presented by the facts alleged by the plaintiffs and admitted by the Commissioner for the purposes of this case.

1. Although the Commissioner has not waived his demurrer to the bill, all parties argued the case in full on the facts alleged and admitted, as they would argue on a case stated. We shall consider and decide the case as though it were a case stated and submitted to us for decision. In any event the bill is not demurrable. It alleges the existence of an actual controversy of a justiciable nature. Its legal sufficiency as a bill for declaratory relief does not depend on the correctness of the proposition for which the plaintiffs contend. The general rule is that the plaintiffs in such a case are entitled to a declaration of rights or obligations in the controversy stated. *Franklin Fair Assn. Inc.* v. *Secretary of the Commonwealth*, 347 Mass. 110. *Travelers Ins. Co.* v. *Graye, ante*, 238.

2. The plaintiffs properly do not challenge the power of the Legislature to fix the rates which they may charge for automobile property damage liability insurance. The power to fix such rates is but a part of the Legislature's "large powers in the regulation of the business of insurance." *Opinion of the Justices*, 251 Mass. 569, 607. *German Alliance Ins. Co.* v. *Lewis*, 233 U. S. 389. Although the Legislature has heretofore frequently delegated its power to fix insur-

ance rates to the Commissioner, it acted otherwise in enacting St. 1970, c. 670, expressly fixing rates for certain types of automobile insurance. The plaintiffs attack the constitutionality of those rates fixed by the Legislature, contending that they are confiscatory, but not that the Legislature is without power to fix rates.

3. Section 6 of c. 670 not only fixes rates for several types of automobile insurance, but it also states: "All the reduced rates in this section shall be deemed and accepted as adequate, just, reasonable and nondiscriminatory rates for the calendar year nineteen hundred and seventy-one, based on the current relevant costs." The Commissioner contends that this language is a legislative determination that the insurance rates in question are not confiscatory, that such determination is conclusive, and that it is not subject to judicial review. We disagree with that contention on several grounds.

(a) Whenever the Legislature or any board or commission having authority so to do fixes rates, it may be inferred from such action that it has determined that the rates are not confiscatory, whether they make such an express declaration or not.[4] The action of the Legislature would have the benefit of the same presumption of validity with or without a declaration to that effect in the statute.

(b) The Legislature's express declaration of its determination that the rates are "adequate, just, reasonable and nondiscriminatory" does not expressly or by implication exempt them from judicial review as to whether they are confiscatory. If it did, it would be unconstitutional. While the fixing of rates is not a judicial function, "where a rate established by a public regulatory body is attacked as confiscatory the Constitution of this Commonwealth and seemingly still that of the United States require that there be a

---

[4] On the record before us we need not determine whether legislative action implies a determination that the rates so fixed meet the possibly higher statutory standard of "adequate, just, reasonable and nondiscriminatory rates." See *Massachusetts Bonding & Ins. Co.* v. *Commissioner of Ins.* 329 Mass. 265, 270. *American Employers' Ins. Co.* v. *Commissioner of Ins.* 335 Mass. 748, 751.

full opportunity for judicial review as to both fact and law."
*New England Tel. & Tel. Co.* v. *Department of Pub. Util.*
327 Mass. 81, 85. "It must, therefore, be taken to be the
law of this Commonwealth, not often stated, to be sure, but
nevertheless unanimously, that the Declaration of Rights
guarantees to an owner, who alleges that confiscation of his
property will result from a rate order of the department [of
Public Utilities], a fair opportunity for submitting that issue
to a court for determination upon its own independent judg-
ment as to both law and facts . . . ." *Lowell Gas Co.* v.
*Department of Pub. Util.* 324 Mass. 80, 88. Although this
constitutional requirement of judicial review has been ap-
plied most frequently to rates for public utilities, it "is as
applicable to insurance premiums as it is to rates of pub-
lic utilities narrowly defined." *Opinion of the Justices,*
251 Mass. 569, 611. This right of judicial review of rates
is not limited to those instances where there is a statutory
grant of such right; nor does the absence of such statutory
grant mean that there is no such right. The right derives
from the Constitution of this Commonwealth, and particu-
larly from arts. 1, 10 and 11 of the Declaration of Rights.
*Opinion of the Justices,* 251 Mass. 569, 611. *Lowell Gas
Co.* v. *Department of Pub. Util.* 324 Mass. 80, 89. *Opinion
of the Justices,* 328 Mass. 679, 686. *Massachusetts Bonding
& Ins. Co.* v. *Commissioner of Ins.* 329 Mass. 265, 271. The
same rule applies whether the rates be fixed by the Legisla-
ture or by a board or commission to which the legislative
power to fix rates has been delegated.

4. The Commissioner contends that the plaintiffs are not
entitled to relief from the rates fixed by the Legislature be-
cause the bill does not allege in sufficient detail what the
effect of the rates will be on each plaintiff, but instead alleges
their effect on all companies in the aggregate. This con-
tention is based in part on statements made in *Aetna Ins.
Co.* v. *Hyde,* 275 U. S. 440, 446–448,[5] frequently cited in

[5] "It has never been and cannot reasonably be held that state-made rates
violate the Fourteenth Amendment merely because the aggregate collections
are not sufficient to yield a reasonable profit or just compensation to all com-
panies that happen to be engaged in the affected business. . . . In order to

support of this position. However, there is authority to the effect that the aggregate experience of a group of insurers may be deserving of greater weight than that of an individual company. *American Eagle Fire Ins. Co.* v. *Jordan*, 67 F. Supp. 76, 85, remanded in *Jordan* v. *American Eagle Fire Ins. Co.* 169 F. 2d 281 (D. C. Cir. 1948). Similarly the fixing of rates for natural gas producers on an area cost of service approach rather than an individual approach has been upheld. *Phillips Petroleum Co.* v. *Wisconsin*, 347 U. S. 672. *Wisconsin* v. *Federal Power Commn.* 373 U. S. 294, 299, 308–310. *Permian Basin Area Rate Cases*, 390 U. S. 747. *Skelly Oil Co.* v. *Federal Power Commn.* 375 F. 2d 6, 20–22 (10th Cir. 1967). For the purposes of this decision we are not required to elect between the individual approach on the one hand and the industry or area approach on the other. While the bill before us includes allegations of the aggregate experience of all companies, it includes sufficient allegations with reference to each individual plaintiff to meet the requirements of the rule laid down in *Aetna Ins. Co.* v. *Hyde, supra,* if it applies.

5. The Commissioner contends that the plaintiffs are not entitled to a determination of the constitutional adequacy of the rates for automobile property damage liability insurance alone, that such a determination may be made only on the basis of their "overall automobile insurance situation," and that since the bill contains allegations limited to the property damage insurance it is demurrable. We do not agree with this contention. The statutes of this Commonwealth on the subject of automobile liability insurance show a pattern of separate treatment of each type of coverage for rate purposes. This pattern has existed over a period of years and it appears to have been recognized by St. 1970, c. 670, § 6. The rates for the compulsory coverage are fixed by the Commissioner under G. L. c. 175, § 113B. The rates

invoke the constitutional protection, the facts relied on to restrain the enforcement of rates prescribed under the sanction of state law must be specifically set forth, and from them it must clearly appear that the rates would necessarily deny to the plaintiff just compensation and deprive it of its property without due process of law."

for some optional coverage to certain limits (for excess personal injury and death coverage, for extra territorial coverage, for guest coverage, for medical payments and for property damage) are subject to the approval of the Commissioner under G. L. c. 175, § 113C, as amended through St. 1970, c. 670, § 9. The rates for certain additional and other optional types of coverage (fire, theft, comprehensive and collision coverage, uninsured motorist coverage and higher excess coverages for personal injuries and property damage) are permitted to be filed by the insurers subject to subsequent disapproval by the Commissioner. G. L. c. 175A. *Insurance Rating Bd.* v. *Commissioner of Ins. ante,* 171. There is nothing in this statutory scheme of regulation of insurance rates which permits either the Commissioner or the insurers to fix rates for any category of coverage at a level which is higher than otherwise permitted in order that such excess may offset or make up a constitutional inadequacy in the rates for another category of coverage. The statutes when read in their entirety disclose a legislative intent that each type of automobile liability insurance coverage be considered and treated separately from all others for rate purposes. We thus need not consider whether the Legislature could constitutionally require or permit excessive rates in one category to subsidize deficient rates in another category. See *Baltimore & Ohio R.R.* v. *United States,* 345 U. S. 146; *Pan Am. World Airways, Inc.* v. *Civil Aeronautics Bd.* 256 F. 2d 711 (D. C. Cir. 1958).

6. Finally, the Commissioner contends that since the Commonwealth has the power to regulate the insurance business and to take over the business of writing automobile property damage liability insurance, it is "equally free to prescribe the rates at which such insurance shall be written irrespective of the effect of such rates on the petitioners"; and that "if the companies cannot write the insurance at those rates they are free to stop writing it." Such a proposition is unacceptable under the Constitutions of this Commonwealth and of the United States. The Commonwealth's admitted power to regulate the insurance business and the

rates which are charged for insurance does not permit it to limit the conduct of such business to those companies which submit to whatever rates the Commonwealth may fix, even if they be confiscatory. The writing of insurance is a lawful business and the Commonwealth may not impose unconstitutional conditions upon the exercise of the right to engage therein. See *Wyeth* v. *Cambridge Bd. of Health,* 200 Mass. 474, 478; *Opinion of the Justices,* 300 Mass. 615, 619; *Opinion of the Justices,* 322 Mass. 755, 759–761; *Opinion of the Justices,* 337 Mass. 796, 798–799; *Milligan* v. *Board of Registration in Pharmacy,* 348 Mass. 491, 498–499. While it is not constitutionally required to fix rates which will guarantee a profit to all insurers, it may not constitutionally fix rates which are so low that if the insurers engage in business they may do so only at a loss. The insurers are not required to either submit to confiscatory rates or go out of business. They have a right to rates which are not confiscatory, or which satisfy any higher applicable statutory standards; and to a judicial review on the constitutional or statutory adequacy of such rates.

7. On the basis of the facts alleged by the plaintiffs and admitted by the Commissioner for the purpose of this case we hold that the 1971 rates for automobile property damage liability insurance as fixed by the Legislature under St. 1970, c. 670, § 6, are confiscatory and therefore unconstitutional. See *Massachusetts Bonding & Ins. Co.* v. *Commissioner of Ins.* 329 Mass. 265, 270. Under the severability clause of c. 670,[6] this holding does not impair any of the remaining provisions of the statute. This decision leaves unimpaired that part of G. L. c. 175, § 113C, which, as amended by c. 670, § 9, provides that the rates for certain types of coverage, including automobile property damage coverage to a limit of $5,000, "shall be subject to the approval of the commissioner, under the provisions of section one hundred

---

[6] Section 11 of c. 670 reads: "The provisions of this act are severable, and if any of its provisions shall be held unconstitutional by any court of competent jurisdiction, the decision of such court shall not impair any of the remaining provisions."

and thirteen B." The rates for property damage coverage
in excess of $5,000 shall be fixed in accordance with the
provisions of the General Laws, unaffected by St. 1970,
c. 670, § 6.

8. An interlocutory decree is to be entered overruling the
Commissioner's demurrer. A final decree is to be entered
declaring that (a) the 1971 rates for automobile property
damage liability insurance as fixed by St. 1970, c. 670, § 6,
are confiscatory and therefore unconstitutional; (b) under
G. L. c. 175, § 113C, as amended by St. 1970, c. 670, § 9, the
1971 rates for automobile property damage liability insur-
ance, to a limit of $5,000 offered in conjunction with com-
pulsory bodily injury liability coverage, are subject to the
approval of the Commissioner under the provisions of G. L.
c. 175, § 113B, without regard to St. 1970, c. 670, § 6; and
(c) rates for property damage liability insurance for limits
in excess of $5,000 shall be fixed in accordance with applicable
provisions of the General Laws, without regard to St. 1970,
c. 670, § 6.

*So ordered.*