USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________ No. 95-2316 BASIMAH R. ABDULLAH, et al., Plaintiffs-Appellants, v. COMMISSIONER OF INSURANCE of the COMMONWEALTH OF MASSACHUSETTS, et al., Defendants-Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Nancy J. Gertner, U.S. District Judge] ___________________ ____________________ Before Lynch, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Cummings,* Circuit Judge. ______________ ____________________ Jack E. Robinson, with whom Carpenter & Robinson, LLP was on _________________ ___________________________ brief, for appellants. Judith Fabricant, Assistant Attorney General, with whom Scott _________________ _____ Harshbarger, Attorney General, E. Michael Sloman and Meyer, Connolly, ___________ __________________ ________________ Sloman & MacDonald were on brief, for appellees.  __________________ ____________________  ____________________ *Of the Seventh Circuit, sitting by designation. May 20, 1996 ____________________ -2- LYNCH, Circuit Judge. Plaintiffs mounted a facial LYNCH, Circuit Judge. _____________ challenge to the constitutionality of the Massachusetts statute requiring the Massachusetts Commissioner of Insurance to establish at least fifteen territories for use in classifying risks for setting automobile insurance rates. Mass. Gen. L. ch. 175E, 4(d). It is claimed this requirement is irrational on its face and thus violates the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs also assert that the statute on its face results in an unconstitutional taking in violation of the Fifth and Fourteenth Amendments. Plaintiff Basimah Abdullah lives in the Roxbury section of Boston and is aggrieved that policy holders who live in Roxbury, a mostly poor community of color, may pay automobile insurance rates more than two and a half times more than those paid by policy holders with similar driving records who live in Wellesley, Massachusetts, an affluent suburb of Boston. She is joined as plaintiff by the National Association of African Americans, Inc. After considering cross-motions for summary judgment on stipulated facts, the district court granted the defendants' motion and denied the plaintiffs' motion. We affirm. It is important to be clear about the challenge plaintiffs have chosen to mount. This is a facial challenge to the statute. Plaintiffs have stipulated that no -3- -3- fundamental right is involved in the litigation and their challenge does not involve claims of race discrimination. They do not challenge the group discount provisions of the insurance regulatory scheme, although they do attempt to bring those issues to the attention of the court. Plaintiffs have appropriately stipulated that insurance risk does correlate with the territory in which the insured lives. In light of these stipulations and the very narrow review available in a constitutional challenge to economic regulation by a state, grant of summary judgment in favor of the defendants was plainly correct. The challenged statute requires: For motor vehicle insurance rates, the commissioner shall establish a classification of risks which shall include a designation of not less than fifteen territories. Mass. Gen. L. ch. 175E, 4(d). In order to prevail, the plaintiffs would have to show that the establishment of a minimum of fifteen territories for use in classifying automobile insurance risks could not be rational. See Members of the City Council v. ___ ____________________________ Taxpayers for Vincent, 466 U.S. 789, 796 (1984). Indeed, ______________________ plaintiffs would have to show that no set of circumstances exist under which the statute could be validly applied. See ___ Reno v. Flores, 507 U.S. 292, 301 (1993) (facial attack on ____ ______ due process grounds). Plaintiffs make two arguments, both -4- -4- demonstrating a misunderstanding of the role of the federal courts in reviewing state economic regulation. They argue that because there is no legislative history setting forth the statute's purpose and because the statute allegedly results in unfairness it is unconstitutional. Plaintiffs seek to reverse the burdens in constitutional economic regulation litigation by saying that the state, in a situation where no fundamental rights are involved, must provide legislative history explaining the purpose of its choice of classifications. Cf. City of ___ ________ Richmond v. J. A. Croson Co., 488 U.S. 469, 500-04 (1989) _________ __________________ (when legislature employs suspect classification, court reviews legislative findings to support the discrimination visited). In the absence of legislative history plainly explaining the purpose of an economic regulatory provision, the plaintiffs posit, the statute must be presumed to be irrational. But there is no such requirement and no presumption. The Constitution does not impose on state legislatures the requirement of creating a legislative history record to justify economic regulatory legislation. See FCC v. Beach Communications, Inc., 508 U.S. 307, 315 ___ ___ ___________________________ (1993) ("we never require a legislature to articulate its reasons for enacting a statute"). Plaintiffs who claim a statute is irrational bear the burden of showing that it is so. Id. ("[T]hose attacking ___ -5- -5- the rationality . . . have the burden to negative every conceivable basis which might support it.") (internal quotation omitted). That showing of irrationality is not made by simple arguments of perceived unfairness. The statutory scheme must stand so long as it bears "some rational relationship to a legitimate state purpose." San ___ Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 44 ___________________________ _________ (1973). We cannot say that on its face the legislative choice of requiring at least fifteen territories is irrational. It is evident that insureds in different territories pose different risks and it is rational to permit the insurance companies to set premiums to reflect those different risks. The choice by the legislature to mandate the establishment of at least fifteen territories may reflect a judgment that that number will provide some approximate reflection of the proper number of categories into which this type of risk should be divided. That the state has chosen to classify purchasers into groupings based on objective characteristics and to use such groupings as a base on which to set rates is surely rational and promotes a more equitable insurance system. In fact, the Commissioner has chosen to create 27 territories, a decision which is also rational on the theory that somewhat more territories more closely reflect the risk associated with the residents of those territories. The -6- -6- parties have appropriately stipulated that the risk of loss "varies according to the town in which the [insured] vehicle[] [is] principally garaged." They have also stipulated that each state uses some form of territorial subdivision system to set rates and such use of territorial assignment has existed in this country since 1917. Prior rate-setting schemes in Massachusetts, also implementing some form of territorial system, have twice been held constitutional by the state courts. See Doherty v. ___ _______ Commissioner of Ins., 102 N.E.2d 496 (Mass. 1951); Brest v. ____________________ _____ Commissioner of Ins., 169 N.E. 657 (Mass. 1930). ____________________ The scheme itself has been tested in a manner consonant with democracy. Prior unhappiness about the territorial rating system once led to an initiative petition which would have abolished the use of territories. The voters rejected the petition by a margin of three to one. Commonwealth of Massachusetts Election Statistics, Pub. Doc. _________________________________________________ No. 43, at 343-45 (1950). The Commissioner establishes territories in a public proceeding which is subject to judicial review, and we do not understand plaintiffs to complain about these procedures. Indeed, the federal courts would abstain from considering the constitutionality of a particular decision of the Commissioner defining the territories or setting particular rates. See Allstate Ins. ___ _____________ Co. v. Sabbagh, 603 F.2d 228, 233 (1st Cir. 1979) (affirming ___ _______ -7- -7- decision of district court to abstain from such a suit due to intensity of local interest and because Massachusetts had "indicated the importance it place[d] on coherency by concentrating review of all regulatory decisions in one court"). Even consideration of the facts surrounding Ms. Abdullah's individual situation does not establish the irrationality of the statute. The territory in which Ms. Abdullah lives, the Roxbury section of Boston, does reflect greater insurance risks than the territory she has chosen as a comparator, the territory including the town of Wellesley, Massachusetts. The parties agree that in 1993, the Roxbury territory, Territory 22, had 3.5 times the state average of bodily injury claims, while the Wellesley territory, Territory 2, had half the claims. Further, if one looks at bodily injury per 100 accidents, the statewide average was 30.6. The territory in which Ms. Abdullah lives had 56.6 bodily injuries per 100 accidents, while the Wellesley territory had 17.4. As a final example, although insurance coverage for theft is not compulsory (see Mass. Gen. L. ch. ___ 90, 34A, 34B, 34O; ch. 175, 113O), in the Roxbury territory, the theft rate is five times the state average, while the rate in the Wellesley territory is one-half the state average. These statistics support the rationality of the statutory scheme.  -8- -8- Plaintiffs' efforts to bootstrap their Equal Protection claim into some form of takings analysis is neither supported by the case law nor the facts. Plaintiffs argue that because some ratings schemes have been held unconstitutionally confiscatory to the insurance company if __ ___ _________ _______ the scheme deprives the company of an opportunity to achieve a fair return, see Aetna Casualty & Sur. Co. v. Commissioner ___ _________________________ ____________ of Ins., 263 N.E.2d 698, 703 (Mass. 1970), Ms. Abdullah may _______ assert a claim that the premiums she pays as an insurance purchaser are so high as to be unconstitutionally confiscatory. Without accepting the premise of the argument or its leap from the property rights of a regulated insurance company to the premiums paid by an insured, the argument suffers from fatal flaws. The facts asserted in support of the argument are not properly before us. Ms. Abdullah states in her brief before this court that she pays more than one- third of the value of her car to insure it each year. This, she says, effectively denies her the use of her automobile, as the Massachusetts legislature requires that automobiles be insured in order to be operated on a public way. See Mass. ___ Gen. L. ch. 90, 34B. And without a car, Ms. Abdullah says, her constitutional right to travel is infringed. However, the parties agreed to litigate this case on stipulated facts. The only facts with respect to Ms. Abdullah's personal circumstances that are properly before us are that she -9- -9- "resides . . . in the Roxbury section of Boston," that she "owns a private passenger automobile which is garaged in Roxbury and is insured . . . under the compulsory automobile insurance laws of the Commonwealth," and that the average rate for the standard package of insurance was higher in the Roxbury territory than in the Wellesley territory. Even were there facts in the record to support Ms. Abdullah's claim, the argument collapses because a foundational piece is missing. The statutory provision under attack does not per se result in any particular rate being set or premium being charged. It simply requires that there be at least fifteen territories used in assessment of risk factors, and plaintiffs do not attempt to show that any possible designation of fifteen or more territories would result in a confiscatory rate for Ms. Abdullah. Moreover, other risk factors such as driver class (which includes number of years of driving experience) and group discounts also go into the assessment of an individual's rates. The facts before the court do not establish a causal connection between the statute facially attacked and the rates claimed to be confiscatory. In essence, plaintiff's argument inappropriately asks us to turn this facial challenge to the statute into an as applied challenge. Cf. Keystone ___ ________ Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 494-95 ______________________ ____________ (1987) (in facial challenge, "mere enactment" of the statute -10- -10- must deprive plaintiff of economically viable use of her real property); Gilbert v. City of Cambridge, 932 F.2d 51, 56 (1st _______ _________________ Cir.), cert. denied, 502 U.S. 866 (1991). ____________ Plaintiffs' claim at bottom is that the system is unfair. It may or may not be. There is evidence submitted by the defendants that in fact the Commissioner has required certain non-urban areas essentially to subsidize the insurance of persons, such as Ms. Abdullah, living in highly urban areas. Importantly, however, the question of fairness is not properly addressed to this court. Those arguments should be made to the state insurance regulatory authorities or to the Massachusetts legislature or directly to the citizenry through the petition process. Our review is restricted to whether there is any rational basis for this scheme. There is, and the constitutional challenge must fail.  For these reasons, the decision of the district court is affirmed. ________ -11- -11-